**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 16 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

COYETTE DEON JOHNSON,

Defendant-Appellant.

No. 96-6393

---

Appeal from United States District Court
for the Western District of Oklahoma
(D.C. No. 96-CR-80)

---

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma,
for the appellant.

David L. Walling, Assistant United States Attorney (Patrick M. Ryan, United
States Attorney, with him on the brief), Oklahoma City, Oklahoma, for the
appellee.

---

Before TACHA, McKAY, and BRISCOE, Circuit Judges.

---

BRISCOE, Circuit Judge.

---

Defendant Coyette Johnson appeals his convictions of being a felon in possession of a firearm, being an unlawful user of controlled substances in possession of a firearm, and distribution of a controlled substance, and his concurrent sentences of 237 months' imprisonment. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm in part, reverse in part, and remand with instructions to vacate Johnson's conviction for being an unlawful user of controlled substances in possession of a firearm.

I.

Johnson was convicted of a felony in Wichita County, Texas, in 1994. In late July or early August 1995, he and his girlfriend LaKeitha Diggs moved to Temple, Oklahoma. They initially lived with Diggs' mother and her mother's other three children. During their stay at Diggs' mother's house, Johnson smoked marijuana on a daily basis. He also possessed a 9mm Intratec Tec-9 semi-automatic handgun, which he stored in a paper sack on the floor of the closet in one of the children's rooms. He talked about the handgun on a regular basis with Diggs' mother's sons and other young men who came to the house. In late August 1995, Johnson and Diggs moved into a house approximately three blocks from Diggs' mother's house. They continued to visit Diggs' mother's house on a daily basis, Johnson continued to smoke marijuana on a regular basis, and Johnson was seen regularly in possession of the handgun.

-2-

On October 18, 1995, the local drug task force arranged for Barbara Watkins, an informant, to attempt a controlled narcotics purchase from Johnson. Watkins met task force agents at Mooney Lake near Temple and the agents searched her car, placed a body microphone on her, and provided her with cash to make the purchase. Watkins, who is Caucasian, picked up Stella Sparks, who is African-American, because she believed it would increase the chances of making a narcotics purchase from Johnson, who is also an African-American. Sparks did not know Watkins was going to make a controlled purchase. Watkins and Sparks went to Diggs' mother's house where Johnson agreed to sell Watkins three rocks of cocaine for $40. After Watkins and Sparks left the house and returned to the car, Sparks took one of the rocks of cocaine and walked away. Watkins returned to Mooney Lake and turned over the remaining rocks of cocaine to the agents. A chemist at the Oklahoma State Bureau of Investigation confirmed the substance was cocaine, but he did not determine whether it was cocaine hydrochloride or cocaine base.

Later that same evening, Johnson was socializing with several other people at Diggs' mother's house when Sandra Mims arrived and informed them she had argued with Johnny Green and he pulled a knife on her. A group of nine or ten of them left the house in Mims' car to find Green. Some rode inside the car and others rode on the hood of the car. They first went to Ruby's Cafe but Green was

not there. The group then proceeded, some in the car and some on foot, to Green's house. They flagged down Jimmy Franklin, and Mims' daughter Shatauna Elicks got out of the car, began swinging her arms at him, and asked Franklin if he knew who had "jumped" her mother. Johnson also got out of the car, walked to the front of Franklin's car, aimed his handgun at Franklin, and said something to the effect of "I am going to get this brother. I am going to kill this nigger." R. III at 162. Franklin heard gunshots, realized his passenger window had been shot, and ducked down in the seat and hit the accelerator pedal. When he looked up, he saw Johnson on the hood of his car, holding onto the hood with his left hand and holding his gun in his right hand. Johnson told Franklin to stop but, after briefly stopping his car, Franklin again hit the accelerator pedal and drove in an erratic fashion until Johnson fell off the hood of the car. Franklin noticed Johnson's handgun was lodged between the hood of the car and the windshield so he reached his hand out the window and grabbed the gun. He then drove downtown where he located a police officer and told her what had happened. Officers determined the gun was loaded. They examined Franklin's car and found deep scratches on the hood. Although a bullet was retrieved from the driver's seat of the car, subsequent testing determined the bullet had not been fired by Johnson's gun.

A grand jury returned a three-count indictment against Johnson, charging him in Count 1 with being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)), in Count 2 with being an unlawful user of controlled substances in possession of a firearm (18 U.S.C. § 922(g)(3)), and in Count 3 with distribution of a controlled substance (21 U.S.C. § 841(a)(1)). Although the district court did not require the government to elect between Count 1 and Count 2 prior to trial, it concluded that if Johnson was convicted on both counts, it would sentence him on only one count. Johnson was convicted by jury on all three counts and was sentenced to 237 months' imprisonment. The court sentenced him on only one of the 922(g) counts, but the convictions on both counts remain in place.

## II.

### Denial of pretrial motions to dismiss

Johnson contends the district court erred in denying his pretrial motions to dismiss. Johnson sought dismissal of Counts 1 and 2 as multiplicitous, and dismissal of Count 2 because the charging statute was void for vagueness. Although he acknowledges he was not punished for Count 2, he argues the alleged error was prejudicial because it allowed the government to introduce evidence at trial concerning a prior felony conviction and his drug usage.

*Multiplicity*

Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior. United States v. Morehead, 959 F.2d 1489, 1505 (10th Cir. 1992). "While multiplicity is not fatal to an indictment, . . . it poses the threat of multiple sentences for the same offense and may improperly suggest to the jury that the defendant has committed more than one crime." Id. (citation omitted). The threat of multiple sentences for the same offense raises double jeopardy implications. Id. We review claims of multiplicity de novo. United States v. McIntosh, 124 F.3d 1330, 1336 (10th Cir. 1997).

Counts 1 and 2 both charged Johnson with knowingly possessing the Tec-9 handgun "[f]rom on or about July 1, 1995, up to and including on or about October 18, 1995." R. I, doc. 1. The only distinction between the counts is that Count 1 alleged Johnson had been convicted of a felony and had violated 18 U.S.C. § 922(g)(1), whereas Count 2 alleged he was an unlawful user of controlled substances and had violated 18 U.S.C. § 922(g)(3). In denying Johnson's pretrial motion to dismiss one of the counts, the district court concluded "it was not the intention of Congress to provide for the punishment of a defendant under two or more separate subdivisions of § 922(g)." Id., doc. 35 at 5. However, the court concluded the government was not required to elect between the two counts because it was possible Johnson "could be found guilty of

-6-

one count without necessarily being guilty of the other." Id. The court concluded if Johnson was found guilty of both counts, judgment would be entered on only one count to avoid dual punishment. Id. (citing Ball v. United States, 470 U.S. 856, 865 (1985)). Johnson was convicted on both § 922(g) counts and sentenced on one count (Count 1), but the record on appeal indicates both convictions remain in place.

Three circuits have addressed multiplicity arguments raised by defendants who, like Johnson, were simultaneously charged with multiple firearm violations under different subsections of § 922(g). In United States v. Peterson, 867 F.2d 1110 (8th Cir. 1989), one codefendant was convicted of three counts of unlawful possession of firearms and ammunition by a convicted felon, in violation of § 922(g)(1), and one count of unlawful possession of firearms and ammunition by a user of controlled substances, in violation of § 922(g)(3).[1] In rejecting the multiplicity argument, the Eighth Circuit held multiple firearm violation counts charged under different subsections of § 922(g) but arising out of the same pattern of conduct were not multiplicitous because, under Blockburger v. United States, 284 U.S. 299, 304 (1932), the counts each required at least one unique element of proof.

---

[1] Unfortunately, the opinion provides little detail concerning the facts of the case. In particular, it is unclear whether the (g)(3) charge was based on possession of the same firearm and at the same time as one of the (g)(1) charges.

In United States v. Winchester, 916 F.2d 601 (11th Cir. 1990), defendant was convicted and sentenced for violations of § 922(g)(1) (felon in possession of firearm) and (g)(2) (fugitive from justice in possession of firearm), arising out of the same conduct (i.e., possession of a single firearm). On appeal, defendant argued the counts were multiplicitous and he should not be sentenced for both. The Eleventh Circuit agreed, concluding "that, in enacting section 922(g), it was not within Congress' comprehension or intention that a person could be sentenced, for a single incident, under more than one of the subdivisions of section 922(g)." Id. at 606. Although the court acknowledged that each offense required proof of a fact the other did not, it distinguished Blockburger on two grounds. First, the court noted the defendant in Blockburger was convicted and sentenced under two different statutory sections while the defendant in Winchester was convicted under two different subsections of the same statute.[2]

_____

[2] Although the discussion of this point is conclusory, it appears to be supported by Supreme Court precedent and other circuits. For example, in Sanabria v. United States, 437 U.S. 54, 70 n.24 (1978), the Court noted the Blockburger "same evidence" test is "used to determine whether a single transaction may give rise to separate prosecutions, convictions, and/or punishments under separate statutes." Similarly, in Ball v. United States, 470 U.S. 856, 861 (1985), the Court emphasized that "[t]he assumption underlying the Blockburger rule is that Congress ordinarily does not intend to punish the same offense under two different statutes." See also United States v. Kimbrough, 69 F.3d 723, 729 n.5 (5th Cir. 1995) (Blockburger test "applies to determinations of whether Congress intended the same conduct to be punishable under two criminal provisions," and is inapplicable where multiple counts are charged under "the same criminal provisions"), cert. denied 116 S. Ct. 1547 (1996).

-8-

Second, the court concluded Blockburger only provided guidance in determining congressional intent and was therefore inapplicable because "[t]he statutory language and legislative history of the Gun Control Act of 1968 [§ 922(g)] reveal[ed] that Congress' intent was to prohibit the possession of firearms by classes of individuals it deemed dangerous, rather than to punish persons solely for having a certain status under the law." Id. In addition, the court concluded any other interpretation of § 922(g) "would lead to [the] anomalous and draconian result" of allowing a defendant having more than one of the statuses listed in the various subdivisions to be sentenced consecutively for the same incident. Id. at 607.

In United States v. Munoz-Romo, 989 F.2d 757 (5th Cir. 1993), the Fifth Circuit acknowledged and agreed with Winchester. Although the Fifth Circuit had originally applied Blockburger and upheld multiple sentences under various subsections of § 922(g), see United States v. Munoz-Romo, 947 F.2d 170 (5th Cir. 1991), defendant filed a petition for writ of certiorari and, in response, the Solicitor General of the United States changed positions, confessed error, and urged that the case be remanded for dismissal of one of the counts. The Supreme Court granted certiorari, vacated the judgment, and remanded for further consideration in light of the position asserted by the Solicitor General. On remand, the Fifth Circuit concluded that "Congress, by rooting all the [firearm

-9-

possession] offenses in a single legislative enactment and including all the offenses in subsections of the same statute, signaled that it did not intend multiple punishments for the possession of a single weapon." 989 F. 2d at 759. The court further concluded the test in Blockburger for determining legislative intent was not controlling because "Congress intended to describe only a single crime that could be committed by seven types of offenders." Id.

In light of the more persuasive reasoning contained in Winchester and Munoz-Romo, and in light of the Solicitor General's position maintained in Munoz-Romo, we conclude Counts 1 and 2 are multiplicitous and that Johnson can only be convicted and punished for one of the § 922(g) counts. Although Johnson was properly sentenced on only one count, both convictions remain in place. Accordingly, we remand this case to the district court with instructions to vacate Johnson's conviction on Count 2.

The only remaining question is whether the district court erred in refusing to require the government to elect between the two firearm counts prior to trial. A decision of whether to require the prosecution to elect between multiplicitous counts before trial is within the discretion of the trial court. See United States v. Throneburg, 921 F.2d 654, 657 (6th Cir. 1990); United States v. Phillips, 962 F. Supp. 200, 201 (D.D.C. 1997). The risk of a trial court not requiring pretrial election is that it "may falsely suggest to a jury that a defendant has committed

not one but several crimes." United States v. Duncan, 850 F.2d 1104, 1108 n.4 (6th Cir. 1988); see also United States v. Marquardt, 786 F.2d 771, 778 (7th Cir. 1986) (multiple indictments create the impression of more criminal activity than in fact occurred). "Once such a message is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue," and will reach a compromise verdict or assume the defendant is guilty on at least some of the charges. United States v. Clarridge, 811 F. Supp. 697, 702 (D.D.C. 1992).

We conclude the district court did not abuse its discretion in denying Johnson's pretrial motion to dismiss one of the § 922(g) counts. As the court noted, the possibility (albeit slim) existed that Johnson could be convicted on one count and acquitted on the other. Even if the court's denial of the motion could be considered an abuse of discretion, it is clearly harmless in this case. See United States v. Lane, 474 U.S. 438, 449 (1986) (misjoinder of counts does not require reversal if it can be regarded as harmless error). The evidence of Johnson's guilt on all of the counts was overwhelming. There is little if any risk that the evidence pertaining to the multiple firearm counts resulted in the jury reaching a compromise verdict or in assuming Johnson's guilt on one or more of the counts.

*Vagueness*

Count 2 of the indictment charged Johnson with violating § 922(g)(3), which makes it "unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) . . . to . . . possess . . . any firearm." According to Johnson, the statute is unconstitutionally vague because it fails to define the term "unlawful user of . . . any controlled substance" and does not require a nexus in time or place between the use and possession of a firearm. As we are reversing Johnson's conviction on Count 2 and remanding with instructions to vacate that conviction, it is unnecessary for us to address this vagueness issue.

*Denial of pretrial motion to sever counts*

Johnson contends the district court erred in denying his pretrial motion to sever Counts 1 and 2 from Count 3 at trial. Under Fed. R. Crim. P. 8(a), joinder of offenses is permitted if the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Although alleged misjoinder under Rule 8 is a question of law subject to de novo review, we construe Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system. United States v. Janus Indus., 48 F.3d 1548, 1557 (10th Cir.

1995). Aside from the provisions of Rule 8, a district court has discretion to sever under Fed. R. Crim. P. 14 if it appears defendant will be prejudiced by joinder of the offenses. Whether to grant severance under Rule 14 rests within the discretion of the district court and the burden on defendant to "'show an abuse of discretion in this context is a difficult one.'" Id. (quoting United States v. Valentine, 706 F.2d 282, 290 (10th Cir. 1983)). Prejudicial joinder occurs under Rule 14 when an individual's right to a fair trial is threatened or actually deprived. United States v. Holland, 10 F.3d 696, 699 (10th Cir. 1993).

We conclude joinder of the offenses here was proper under Rule 8 because the handgun was arguably related to and part of Johnson's drug trafficking scheme. Although there was no evidence that Johnson actually used or carried the handgun when he sold cocaine to Watkins on the night of October 18, 1995, there was evidence he had made previous sales of drugs in Temple. It was reasonable for the jury to infer the handgun aided or assisted him in those transactions. See United States v. Hubbard, 61 F.3d 1261, 1270 (7th Cir. 1995) ("natural inferences" may be drawn from contemporaneous possession of guns and drugs because "the firearm is an indication of drug activity, and participation in drug trafficking supplies a motive for having the gun"), cert. denied 116 S. Ct. 1268 (1996); United States v. Hollis, 971 F.2d 1441, 1457 (10th Cir. 1993) (possession of firearm was part of drug trafficking scheme). Moreover, law enforcement

officers took possession of the handgun within hours of Johnson making the cocaine sale to Watkins on October 18, 1995. See United States v. Cox, 934 F.2d 1114, 1119 (10th Cir. 1991) (joinder of marijuana distribution offenses with possession of firearm offenses proper where firearm was seized at same time and same place officers seized marijuana).

Finally, we conclude the district court did not abuse its discretion by denying severance under Rule 14. The court's order suggests it considered possible prejudice from a single trial on all counts against expense and inconvenience of separate trials and decided severance was not required. Nothing Johnson has presented demonstrates this was an abuse of discretion. See generally Hollis, 971 F.2d at 1457 ("The district court was not required to sever the counts simply because . . . the 'defendant might have a better chance for acquittal by separate trials.'"). Moreover, even assuming the court did abuse its discretion, Johnson has not demonstrated actual prejudice resulting from a single trial. The evidence of Johnson's guilt on Count 3 was overwhelming. It was uncontroverted that Watkins went to Diggs' mother's house on October 18, 1995, where she met with Johnson and left with three rocks of cocaine. Although Johnson attempted to call into question the identity of the person who sold cocaine to Watkins, Watkins testified at trial and unequivocally identified Johnson as the person who had sold the cocaine to her. Accordingly, there is no

indication that joinder of the firearms offenses or introduction of evidence concerning those offenses influenced the jury's verdict on Count 3.

*Jury instructions regarding distribution count*

Johnson contends the district court erred in refusing to give his proposed instruction to the effect that it was the government's responsibility to prove beyond a reasonable doubt that the substance sold to Watkins was in fact cocaine base as alleged in the indictment. Count 3 alleged that Johnson distributed "approximately .18 grams of a mixture or substance containing a detectable amount of *cocaine base*, a Schedule II controlled substance." R. I, doc. 1 at 2 (emphasis added). The district court rejected Johnson's proposed instruction and instructed the jury that it must find beyond a reasonable doubt that Johnson distributed a "controlled substance."

We find United States v. Deisch, 20 F.3d 139 (5th Cir. 1994), persuasive. In Deisch, the Fifth Circuit addressed and rejected an argument similar to that now urged by Johnson. The court concluded "that the identity of the involved controlled substance as being 'cocaine base' rather than simply 'cocaine' is not an element of any section 841(a)(1) offense." Id. at 151. Instead, the court held: "For a section 841(a)(1) offense involving cocaine base the indictment need only allege, and the jury need only find, that the substance was cocaine, and whether or

-15-

not it was the 'cocaine base' form of cocaine is purely a sentencing factor." Id.; see also United States v. Levy, 904 F.2d 1026, 1034 (6th Cir. 1990) ("Under section 841(b)(1)(B), the district court determines the quantity and type of controlled substance for the purpose of sentencing.").

Here, the jury was instructed that to find Johnson guilty on the distribution charge, it must find he distributed "a controlled substance," "knew that he distributed a controlled substance," and "intended to distribute the controlled substance." R. I, doc. 46, instr. 25. The jury was further instructed that it was "not necessary for the government to prove that [Johnson] knew the precise nature of the controlled substance that was distributed." Id., instr. 26. Finally, the jury was instructed cocaine was a "controlled substance[] under federal law." Id., instr. 27. These instructions are clearly consistent with Deisch and required the jury to determine Johnson knew he was distributing a controlled substance and intended to distribute a controlled substance. No more was required under Deisch and, more importantly, no more is required to prove a violation of § 841(a)(1). The district court did not err in rejecting Johnson's tendered instruction.

*Sufficiency of evidence*

Johnson contends the evidence at trial was insufficient to support his convictions. Sufficiency of the evidence is a question of law subject to de novo

review.  United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997).  Evidence is sufficient to support a conviction if the evidence and reasonable inferences drawn therefrom, viewed in the light most favorable to the government, would allow a reasonable jury to find defendant guilty beyond a reasonable doubt.  Id.  In examining the evidence, "we evaluate the sufficiency of the evidence by 'consider[ing] the collective inferences to be drawn from the evidence as a whole.'"  Id. (quoting United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986)).  We will not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict.  United States v. Chavez-Palacios, 30 F.3d 1290, 1293 (10th Cir. 1994).

To support a felon in possession of a firearm conviction under § 922(g)(1), the evidence must demonstrate defendant was a convicted felon, defendant knowingly possessed a firearm, and the firearm traveled in or affected interstate commerce.  See United States v. Capps, 77 F.3d 350, 352 (10th Cir.), cert. denied 116 S. Ct. 2568 (1996).  Johnson stipulated he was a convicted felon.  The evidence overwhelmingly demonstrated he possessed a Tec-9 handgun from the time he moved to Temple in late July 1995 until October 18, 1995, when it was recovered by officers.  It was uncontroverted that the handgun had been manufactured in Florida and had thus traveled in interstate commerce to reach

Oklahoma. Viewed in the light most favorable to the government, this evidence is sufficient to support Johnson's conviction on Count I.

"Pursuant to the plain language of § 841(a)(1), the essential elements of a prima facie case of distribution of a controlled substance are: (1) knowing or intentional; (2) distribution; (3) of a controlled substance." United States v. Santistevan, 39 F.3d 250, 255 (10th Cir. 1994). "Distribution" has been defined by Congress as a "delivery," which encompasses "the actual, constructive, or attempted transfer of a controlled substance." Id. Watkins testified that she and Sparks went to Diggs' mother's house and negotiated the purchase of $40 worth of cocaine from Johnson. Law enforcement officers corroborated Watkins' testimony and verified that the substances purchased from Johnson were cocaine. Although defense counsel attempted to raise doubts concerning identity of the person who sold the cocaine to Watkins, given Watkins' in-court identification of Johnson as the person she dealt with, the jury had an evidentiary basis for concluding Johnson was the person who sold the cocaine to Watkins. Viewed in the light most favorable to the government, this evidence is sufficient to support Johnson's conviction on Count 3.

*Outrageous governmental conduct*

Johnson contends the district court erred in denying his motion for judgment of acquittal on Count 3 for outrageous governmental conduct. Specifically, he complained that after Watkins made the controlled purchase of cocaine, officers knowingly allowed her to distribute one of the rocks of cocaine to Sparks. He argued it was outrageous conduct for the government to condone this illegal conduct.

In considering a claim of outrageous governmental conduct, our scope of review is de novo. United States v. Sneed, 34 F.3d 1570, 1576 (10th Cir. 1994). The defense of outrageous governmental conduct is based on the Due Process Clause of the Fifth Amendment. Id. Unlike the defense of entrapment, which considers predisposition of defendant to commit the crime, the defense of outrageous governmental conduct looks only at governmental conduct. Id. at 1576-77. To date, courts recognizing the outrageous conduct defense "have not attempted to attach a precise definition to its requirements." United States v. Lacey, 86 F.3d 956, 964 (10th Cir.), cert. denied 117 S. Ct. 331 (1996). "Rather, the relevant inquiry is whether, considering the totality of the circumstances in any given case, the government's conduct is so shocking, outrageous and intolerable that it offends 'the universal sense of justice.'" Id. We have previously emphasized the defense "is an extraordinary [one] reserved for only

-19-

the most egregious circumstances," and "is not to be invoked each time the government acts deceptively or participates in a crime that it is investigating." United States v. Mosley, 965 F.2d 906, 910 (10th Cir. 1992).

The facts Johnson points to in support of his contention are essentially uncontroverted. After making the controlled purchase from Johnson, Watkins gave one of the three rocks of cocaine to Sparks before meeting with drug task force agents. However, this fact must be considered in light of other evidence presented at trial. Watkins testified she had previously attempted to make a controlled purchase from Johnson but was unsuccessful because he believed she was a "snitch." She decided to ask Sparks to accompany her with the hope that Sparks' presence would convince Johnson to make a sale. Sparks was unaware that Watkins was an informant or that a controlled purchase was taking place. When she returned to Mooney Lake, Watkins informed the agents that she had given Sparks a rock of cocaine. Although the agents testified they would have preferred her not giving Sparks a rock of cocaine, they concluded it was Watkins' "only way out" of the situation. Considering all of these facts together, we reject Johnson's outrageous conduct defense. Although Watkins violated the law, the government's acknowledgment of this conduct was not "so shocking, outrageous and intolerable" as to "offend[] the universal sense of justice." Lacey, 86 F.3d at 964. Moreover, the alleged outrageous conduct had no connection to Johnson.

The government did not induce Johnson to become involved in drug distribution for the first time, nor did it substantially coerce him into committing the crime. See Mosley, 965 F.2d at 911 ("two factors . . . form the underpinning for most cases where the outrageous conduct defense has been upheld: government creation of the crime and substantial coercion"); see also Sneed, 34 F.3d at 1577-78.

*Sentence enhancement*

Johnson challenges the district court's decision to sentence him as a career criminal under 18 U.S.C. § 924(e)(1). The government filed a notice of its intent to seek sentence enhancement prior to trial. After trial, Johnson objected on the grounds that three of the four convictions listed in the government's notice were controlled substances offenses that occurred in Wichita Falls, Texas, on March 23, March 26, and August 26, 1993; that the offenses "were part of the same course of conduct or common scheme or plan"; and that the offenses should be treated as a single conviction for purposes of § 924(e)(1).

We review de novo a sentence enhancement imposed under the Armed Career Criminal Act. United States v. Romero, 122 F.3d 1334, 1340 (10th Cir. 1997); see also United States v. Murphy, 107 F.3d 1199, 1208 (6th Cir. 1997) ("Since determining whether the conduct was a single occasion or multiple

occasions presents a legal question concerning the interpretation of a statute, we review the district court's decision de novo."). The government carries the burden of proving by a preponderance of the evidence that an enhancement is appropriate. Id. The Act authorizes an enhanced prison term for a defendant who is convicted of being a felon in possession of a firearm, who has "three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, *committed on occasions different from one another*." 18 U.S.C. § 924(e)(1) (emphasis added); see Romero, 122 F.3d at 1340.

We have not considered the precise question raised by Johnson--whether multiple drug offenses, committed close in time, constitute a single conviction or multiple convictions for purposes of § 924(e)(1). However, we have analyzed § 924(e)(1) on numerous occasions and adopted the view, which is shared by most other circuits, that the statutory reference to offenses "committed on occasions different from one another" "was intended to reach multiple criminal episodes distinct in time." United States v. Tisdale, 921 F.2d 1095, 1098-99 (10th Cir. 1991) (concluding three separate burglary offenses had occurred for purposes of § 924(e)(1) when defendant broke into a shopping mall and burglarized two private businesses and a post office); see also United States v. Green, 967 F.2d 459, 461-62 (10th Cir. 1992) (reaffirming Tisdale and rejecting notion that § 924(e)(1) requires predicate convictions to be result of separate judicial proceedings).

At least five other circuits have addressed and rejected the precise question raised by Johnson. In United States v. Maxey, 989 F.2d 303, 306 (9th Cir. 1993), the defendant urged the court "to apply the single criminal episode rule to multiple drug offenses differently from violent felonies." Specifically, the defendant argued "that convictions that result from a continuous, ongoing business of selling drugs should comprise a single criminal episode for purposes of section 924(e)." Id. The Ninth Circuit rejected this argument and held "that no less than violent felonies, drug offenses committed at distinct, different times are separate predicate offenses for purposes of section 924(e)," id. at 307, "even if committed within hours of each other, similar in nature, and consolidated for trial or sentencing." Id. at 306. The court concluded two sales of PCP-laced cigarettes that occurred in the same state and county within twenty-four days of each other were separate offenses for purposes of § 924(e)(1). Id. at 305-06. See also United States v. Kelley, 981 F.2d 1464, 1473-74 (5th Cir. 1993) (two deliveries of cocaine two weeks apart in different counties were separate offenses for purposes of § 924(e)(1)); United States v. Samuels, 970 F.2d 1312, 1315 (4th Cir. 1992) (two drug offenses one day apart were separate offenses for purposes of § 924(e)(1)); United States v. Roach, 958 F.2d 679, 683-84 (6th Cir. 1992) (three drug sales on March 11, 12, and 26, 1981, were separate offenses for purposes of § 924(e)(1)); United States v. McDile, 914 F.2d 1059, 1061-62 (8th

Cir. 1990) (sales of drugs on September 15, November 15, 17, and 23, 1983, were separate offenses for purposes of § 924(e)(1)).

Having already adopted and applied the "single criminal episode" rule in other contexts, we find it appropriate to follow the Fourth, Fifth, Sixth, Eighth, and Ninth Circuits (all of whom have adopted the "single criminal episode" rule) and apply the rule to cases such as the one at bar involving prior drug offenses. The result is that drug offenses committed at "distinct, different times" will be treated as separate predicate offenses for purposes of § 924(e)(1).

Applying the "single criminal episode" rule here, we conclude the three underlying drug convictions constitute separate offenses for purposes of § 924(e)(1). The presentence report indicated that, on March 23, 1993, Johnson approached an undercover officer in Wichita Falls, Texas, and sold him a quantity of crack cocaine for $20. Three days later he again approached an undercover officer and sold him a quantity of crack cocaine for $20 (the report does not indicate whether it was the same officer). Finally, on August 26, 1993, he committed a third, similar offense by delivering $20 worth of crack cocaine to an undercover officer. Although the three offenses were similar in nature, they were clearly distinct in time and separate criminal episodes for purposes of § 924(e)(1).

III.

We AFFIRM Johnson's convictions on Counts 1 and 3, but REVERSE Johnson's conviction on Count 2 and REMAND the case to the district court with instructions to VACATE that conviction. Because the district court did not consider Count 2 in imposing Johnson's sentence, we AFFIRM his sentence.

No.96-6393, <u>U.S. v. Johnson</u>

**TACHA, J., dissenting.**


I respectfully dissent from that portion of the majority opinion that finds the convictions on Counts I and II multiplicitous. I do not find in the language and structure of 18 U.S.C. § 922(g) a clear Congressional intent not to impose cumulative punishment when possession of a weapon violated more than one of the subdivisions of subsection (g). Congress clearly expressed in the statutory language the intent to bar possession of a firearm by the classes of persons that Congress determined were dangerous. Nothing in the statutory language suggests that because an individual defendant may be proved to fall into several categories, Congress intended that the defendant should be punished under only one of the enumerated subdivisions. The contrary is true and, for me, dictates that the <u>Blockburger</u> test should apply. Clearly, each offense enumerated under the subdivisions of section 922(g) requires proof of a fact that the other subdivisions do not. The majority and the other circuits which the majority follows rely largely on a statutory organization rationale and on the about-face of the Solicitor General in <u>United States v. Munoz-Romo</u>, 989 F.2d 757 (5th Cir. 1993). Neither of these reasons overcomes, for me, the clearly-stated statutory provisions delineating separate enhancements and requiring different proof of the elements of each to which the <u>Blockburger</u> test should be applied. I would follow the

Eighth Circuit in <u>United States v. Peterson</u>, 867 F.2d 1110, 1115 (8th Cir. 1989)

for the reasons ably stated by Judge Barksdale in the dissent in <u>Munoz-Romo</u>.

<u>See</u> 989 F.2d at 760 (Barksdale, J., dissenting).