**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 24, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

IRVEN DOUGLAS ADAMS,

Defendant - Appellant.

No. 04-4273
(D.C. No.  2:03-CR-178-02-DAK)
(D. Utah)

---

**ORDER**

---

Before **MURPHY** and **SEYMOUR,** Circuit Judges.[*]

---

In response to a motion filed by the appellant on March 22, 2011, the court now

recalls its mandate for the limited purpose of entering an Amended Order and Judgment

that replaces the original Order and Judgment issued in connection with this appeal on

January 2, 2007.  The minor change to page 10 of the slip opinion is clerical in nature and

has no effect on the substantive analysis or outcome of the appeal.  The Amended Order

and Judgment is filed *nunc pro tunc* to the original file date of January 2, 2007.

The on-line reporting services who make the decisions of this court available to the

---

[*] The Honorable Michael W. McConnell, originally a member of this panel,
resigned his commission effective August 31, 2009.  The two remaining members of this
panel, who are in agreement, have determined this matter.  *See* 28 U.S.C. § 46(d).

public or to customers of the reporting service shall withdraw the prior decision and shall replace it with the accompanying Amended Order and Judgment.

An amended mandate shall issue forthwith.

Entered for the Court
ELISABETH A. SHUMAKER
Clerk of Court


by: Douglas E. Cressler
   Chief Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**January 2, 2007**

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee

v.

IRVEN DOUGLAS ADAMS,

    Defendant-Appellant.

No. 04-4273
(D.C. No. 2:03-CR-178-02-DAK)
(Utah)

## ORDER AND JUDGMENT[**]

Before **MURPHY**, **SEYMOUR**, and **McCONNELL**, Circuit Judges.

Irven Douglas Adams was charged with five counts of distribution of

methamphetamine in violation of 21 U.S.C. § 841(a)(1); one count of conspiracy to

distribute methamphetamine in violation of 21 U.S.C. § 846; one count of possession of

ephedrine and pseudoephedrine with intent to distribute in violation of 21 U.S.C. §

841(c)(2); nine counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(I);

---

[**]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). He appeals his conviction and the district court's imposition of a life sentence. We affirm.

Prior to trial, Mr. Adams moved to sever two of the methamphetamine distribution counts because he wished to testify regarding some of the charges but not others. The district court denied the motion but indicated it would "fashion instructions" and "limit cross" to ensure a "fair trial." Rec., vol. III at 9. The court later stated that cross-examination would be limited to those topics "reasonably related" to the questions asked, and that "if [Mr. Adams] goes broad [the government is] entitled to go broad." Rec., vol. XIV at 19.

During Mr. Adams' trial, the Supreme Court decided *Blakely v. Washington,* 542 U.S. 296, 313 (2004), holding that facts not admitted by petitioner or found by a jury may not be used to establish a sentence above the prescribed statutory maximum. Due to uncertainty as to *Blakely*'s impact on the federal sentencing guidelines, both parties agreed to submit sentencing enhancement determinations to the jury in the form of special verdicts. The form included sentencing related questions the jury was required to answer only if it first found Mr. Adams guilty of the accompanying crime. Specifically, the jury was required to determine beyond a reasonable doubt whether a "dangerous weapon was possessed in connection with drug trafficking;" whether Mr. Adams

"was an organizer or leader of a criminal activity that involved five or more participants;"

and the quantity of drugs involved. Rec., vol. I at 861. Mr. Adams did not object to the

inclusion of these additional sentencing related questions on the jury verdict form.

The jury convicted Mr. Adams on all counts and determined special verdicts in the

amount of drugs involved, that Mr. Adams was a leader or organizer of criminal activity,

and that a dangerous weapon was possessed in connection with drug trafficking. The

district court calculated Mr. Adams' sentencing guidelines range to be life in prison and

imposed a life sentence. At sentencing, however, the court stated "[i]f the guidelines are

found to be unconstitutional . . . the sentence would be 360 months or 30 years." Rec.,

vol XXI at 34.

On appeal, Mr. Adams argues he is entitled to a new trial because the district court

committed a structural error by combining guilt determinations and sentencing

enhancements in a single trial and verdict form, referring to this as "Blakelyization." He

also asserts the court erred in denying his motion for severance. Finally, he contends the

court committed plain error by sentencing him in a mandatory fashion and requests we

apply the alternative sentence the court provided.

Mr. Adams contends the "Blakelyization" of his trial, the submission of guilt and

enhancement questions to the jury in a single proceeding, constitutes a structural error

warranting a new trial. Because Mr. Adams did not object at trial to the non-bifurcated

proceeding,[1] we analyze this potential error under the four prong plain error test. *United*

---

[1]Not only did Mr. Adams not object, his counsel asserted that a Blakelyized trial was to his tactical advantage. *See* Rec., vol. XV ("Court: *Blakely* was decided during this trial." Mr. Adams' counsel responded: "I told [Mr. Adams] that was probably the best thing going for

*States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation and quotations omitted). A "structural error," is a defect affecting "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 733-34. Where this more serious type of error is at issue, the third prong of the plain error test is relaxed, and structural errors "can be corrected regardless of their effect on the outcome." *Id.* at 733 (quoting *United States v. Olano,* 507 U.S. 725, 735 (1993)). Structural errors, however, are extremely rare. *See Gonzalez- Huerta,* 403 F.3d at 734 ("if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are not structural errors" (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999) (brackets omitted)).

Mr. Adams contends his argument that the introduction of evidence pertaining to both guilt and sentencing enhancements in a non-bifurcated trial qualifies as structural error is supported by the Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), not to fashion a remedy reliant on such a trial process. What Mr. Adams fails to recognize, however, is that the Court eschewed this remedy not because doing so would create widespread structural errors, but because such a system would have undermined Congressional intent. *Id.* at 254. Having the jury decide sentencing issues clearly does him.").

-4-

not constitute structural error.

Mr. Adams has not met the third prong under the traditional plain error test. The evidence proffered regarding Mr. Adams' sentencing issues – drug amounts, whether he was a leader or organizer, the possession of a gun in connection with drug trafficking – would have been admissible in a strictly guilt phase determination in relation to his conspiracy and distribution charges. We are thus not persuaded that Mr. Adams' ability to present a defense was compromised, as he asserts. Accordingly, even assuming Mr. Adams satisfied the first two prongs, he has failed to demonstrate prejudice. The "Blakelyization" of Mr. Adams' trial was not plain error.

Mr. Adams also contends the district court erred in denying his motions to sever. A court may "order separate trials of counts" where a unified trial "appears to prejudice a defendant." FED. R .CRIM. P. 14(a). "Whether to grant severance under Rule 14 rests within the discretion of the district court. . . ." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997). "The defendant bears a heavy burden of showing real prejudice from the joinder of the two counts." *United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994) (citations and quotations omitted). To establish "real prejudice, the defendant must demonstrate that the alleged prejudice he suffered outweighed the expense and inconvenience of separate trials." *Id.* (citation and quotations omitted). In this case, dozens of witnesses testified. The extensive evidence presented by the government would have been admissible against Mr. Adams under Rule 404(b) to show intent or plan regardless of severance. Moreover, presenting the same extensive evidence and witnesses

in two separate trials is a time-consuming, inconvenient, and inefficient use of judicial resources.

Mr. Adams sought a severance because he wished to testify regarding a limited number of counts while avoiding cross-examination in relation to the rest of his charges. At trial, the district court limited cross-examination, requiring Mr. Adams "not be questioned about things [he] did not raise." But Mr. Adams thereafter testified and "opened the door basically on everything on [his] direct," and therefore the government was given wide latitude in cross-examination. Rec., vol. XXI at 19. There is no prejudice to Mr. Adams where his decision to testify and the content he chose to discuss on direct became the basis for cross-examination. Even if there were some prejudice to be found here, it would not outweigh the cost of saddling the court, parties, and witnesses with separate trials requiring presentation of repetitious evidence and testimony. The district court did not abuse its discretion in denying Mr. Adams motions' to sever.

Finally, Mr. Adams asserts his life sentence must be reversed in light of *Booker*, which held judge-found facts employed to enhance a defendant's sentence beyond the guideline range violate the Sixth Amendment. To rectify this constitutional infirmity, the Court fashioned a broad remedy, making the guidelines advisory rather than mandatory in all cases. *Booker*, 543 U.S. at 245. A district court's failure to apply the guidelines as advisory in accordance with *Booker* presents what we have termed a non-constitutional error. *Gonzalez-Huerta*, 403 F.3d at 731-32. Because Mr. Adams did not raise this issue below, his claim on appeal is subject to plain error review. *See id.* at 732. The first two

prongs of the plain error test are met here because the "mandatory application of the Guidelines is error and that error is now plain." *United States v. Williams*, 403 F.3d 1188, 1199-1200 (10th Cir. 2005). To satisfy the third prong of plain error review, Mr. Adams must show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Gonzalez-Huerta*, 403 F.3d at 733 (citation and quotation omitted). He has done so here. During sentencing, the district court noted its dissatisfaction with the mandatory guidelines sentence of life imprisonment and expressed a preference to incarcerate Mr. Adams for a shorter term. *See* Rec., vol. XXI at 30 ("I think 360 months is long enough."); *id.* at 31 ("if the guidelines go away" and sentence length were to rest within the discretion of the district court, a 360 month sentence would be "long enough."). Mr. Adams has shown that the sentence he would have received under a non-binding guidelines regime differs from the sentence he did receive.

The fourth prong requires error that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732 (citation and quotations omitted). We do not automatically "conclude that the fourth prong is met as a matter of course" where "the third prong is satisfied." *Id.* at 736. To satisfy the final prong of the plain error test, therefore, Mr. Adams must make a greater showing than simple prejudice as required by the third prong. The fourth prong "is formidable, as we will only exercise our discretion when an error is 'particularly egregious' and the failure to remand for correction would produce a 'miscarriage of justice.'" *United States v.*

*Trujillo-Terrazas*, 405 F.3d 814, 820 (10th Cir. 2005) (quotation omitted).

We found the fourth prong to be met in challenges to non-constitutional *Booker* errors in *Trujillo-Terrazas*, 405 F.3d 814, and *Williams*, 403 F.3d 1188. In *Trujillo-Terrazas*, 405 F.3d at 819, the district court applied a substantial mandatory sentencing enhancement that failed to reflect the "relatively trivial" prior criminal history upon which it was based. (Mr. Trujillo-Terrazas received a 16-point enhancement for arson, a crime of violence, for flicking a lit match into an automobile in frustration at his ex-girlfriend's new love interest.) *Id.* Although we remanded for resentencing there, we nevertheless expressed our discomfort with any notion of remanding in cases where the "district court felt particular sympathy for" the defendant but the objective application of the § 3553(a) factors did not warrant a lower sentence, as it did in *Trujillo-Terrazas*. In such cases, a remand would be based upon the particular, subjective sympathies of an individual judge, and a spate of remands on such a basis might have the opposite effect of actually impugning "the fairness, integrity, and public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732.[2]

---

[2]In *United States v. Williams*, 403 F.3d 1188 (10th Cir. 2005), the district court stated that "the sentence I am about to impose is so grossly out of proportion to the offense conduct here that it just smacks of something that certainly isn't justice . . . I think this punishment is gross; I think it's immoral." *Id.* at 1198. The court expressed frustration that the mandatory guidelines failed to permit the court to consider the circumstances of the offense. *See Id.* at 1199 ("[he] had a gun literally thrust at him, and he put it in his pocket, and he ends up getting shot, and I wonder who the real victim in this case is."). Applying the plain error test on appeal, we held the fourth prong had been met. Although we did not expressly articulate the role of an objective § 3553(a) analysis, the district court in *Williams* was essentially requesting the discretion it now holds under § 3553(a)(1) to "consider the nature and circumstance of the offense" in imposing a sentence. In *Williams*, as in *Trujillo-Terrazas,* an objective consideration of the § 3553(a)

Here, Mr. Adams has not presented any evidence that objective consideration of § 3553(a) factors warrants a lesser sentence. To the contrary, at sentencing the district court was "convinced [Mr. Adams] was a big drug dealer, " rec., vol. XXI at 30, and the court expressed no particular rationale for a shorter sentence that might suggest a lesser sentence is warranted under § 3553(a). The court simply stated a general feeling that 30 years is a "long, long time." *Id.* at 31. Prior to sentencing, Mr. Adams sought a downward departure to reflect sentencing disparities between him and a co-defendant who reached a plea agreement for a lower sentence and two other factors found in the record on appeal at 943-48. None of these arguments for a lesser sentence "present[] a compelling case that objective consideration of the § 3553(a) factors warrants a departure, and perhaps a significant departure," as was the case in *Trujillo-Terrazas*, 405 F.3d at 821. We decline to reverse Mr. Adam's sentence based on plain error.

Accordingly, we **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge

---

factors, particularly § 3553(a)(1), supported a finding that the fourth prong was met.