FILED
United States Court of Appeals
Tenth Circuit

December 18, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARVIN L. BARBER, a/k/a "Hurt,"

Defendant-Appellant.

No. 07-5183
(D.C. No. 04-CR-00211-001-HDC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

---

A jury convicted defendant-appellant Marvin L. Barber of one count of

Possession with the Intent to Distribute Cocaine, in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(A)(iii); one count of Unlawful Possession of a Firearm by

Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and one

count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

violation of 18 U.S.C. § 924(c)(1)(A). His counsel has submitted a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and seeks leave to withdraw from representing Mr. Barber on appeal. Although he has briefed two issues for our consideration concerning Mr. Barber's conviction, counsel asserts in his motion to withdraw that neither of these issues has merit, and that "counsel does not believe that there are any issues that can be raised on appeal that are not frivolous." Mot. to Withdraw as Counsel of Record, at 1-2. In response, Mr. Barber has filed a pro se brief raising one additional issue for our consideration.

The government contends that none of the three issues raised is meritorious. We agree. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we affirm Mr. Barber's conviction and grant counsel's request to withdraw.

## BACKGROUND

On November 30, 2004, four Tulsa police officers executed a search warrant at a residence located at 3324 North Garrison Avenue in Tulsa, Oklahoma, seeking evidence of criminal activity involving illegal drugs. The warrant was a "John Doe" warrant; that is, the officers did not know who lived at the residence or who might have been dealing drugs there. At approximately 9:40 p.m., Officer Bruce Bonham knocked on the door and announced the

presence of officers with a warrant. When no one inside responded after approximately twenty seconds, officers breached the door.

In the dining room, officers found Roman Checotah and took him into custody. In that room they also found marijuana, suspected narcotics, and a digital scale. They also found baggies in the kitchen area. Officer Bill Yelton then saw Mr. Barber come out of the bathroom. He took him to the dining room and handcuffed him. He noticed that Mr. Barber's hands were wet, but he did not include this information in the incident report. Officers Bonham, Jeff Henderson, and Sergeant Luke Sherman also noticed that Mr. Barber had wet hands, and later testified to this fact at trial.

The officers finished searching the residence. Officer Yelton searched the bathroom that Mr. Barber had exited. Inside the toilet bowl, he found a handgun and baggies containing what appeared to be cocaine base. He also found a baggie containing suspected cocaine base on the bathroom floor.

Officer Yelton read Mr. Barber his rights. Mr. Barber told the officers that he did not live at the residence. He stated that Mr. Checotah was cooking the powder cocaine into crack cocaine for him; that he was there to pick it up; and that he intended to sell it. He indicated that the pistol was used for protection. The officers did not obtain either a handwritten statement or a signature on a waiver of rights form from Mr. Barber.

Mr. Barber's car was parked in the garage and the garage door was closed. In the living room, the officers found a purse containing identification in the name of Montenae Foreman. Ms. Foreman, the renter of the premises at 3324 North Garrison, arrived home after Mr. Barber and Mr. Checotah had been removed from the premises. Officer Yelton testified that he spoke with Ms. Foreman that evening after she returned home.

Mr. Barber's theory at trial appears to have been that Mr. Checotah was the "real" drug dealer, who lived at Ms. Foreman's house and dealt drugs there with Ms. Foreman's knowledge. The defense seemed to suggest that Mr. Barber's presence on the night the search warrant was executed was coincidental, because he was there only to meet Ms. Foreman for a pre-arranged rendezvous.

Mr. Barber attempted to bolster this theory with Ms. Foreman's testimony. She testified that she had known Mr. Checotah for five years and considered him her uncle. He had been living with her aunt but moved out following an argument and had been living at Ms. Foreman's house for several months. She was aware that he had prior involvement with drugs, but she had given him a key to her house.

Ms. Foreman further stated that Mr. Barber did not have a key. She had known Mr. Barber for approximately four months. They saw each other about twice a month to have sexual relations. On the evening when the search warrant was executed, she called Mr. Barber at around 9:15 p.m. and asked him to meet

her at her house. She gave him directions to the house, told him to park in the garage, and informed him that Mr. Checotah would be there to let him in. She stated she had never met Mr. Barber at her house before because she did not want her boyfriend to find out about their relationship.

On rebuttal, the prosecution called Officer Yelton, who gave a very different version of events based on his recollection of what Ms. Foreman had told him the night of the arrests. At that time, according to Officer Yelton, Ms. Foreman told him that Mr. Barber had a key to her house. In the mind of the jury, this testimony could have connected Mr. Barber more than incidentally to the premises where drugs were being sold. She stated Mr. Barber was not supposed to be there that evening, undermining his explanation that she had invited him there for a sexual rendezvous. Finally, she denied knowing Mr. Checotah, undermining Mr. Barber's theory that Mr. Checotah was the "real" drug dealer at her house.

Finally, at trial, Mr. Barber stipulated that the substances recovered in the bathroom were cocaine base; that the pistol recovered from the toilet was a fully functional firearm; and that the pistol must have traveled in interstate commerce to reach the location where it was found. He also stipulated that he had previously been convicted of crimes punishable by imprisonment for a term exceeding one year (i.e., that he had prior felony convictions).

**ANALYSIS**

*Anders* instructs that "if counsel finds his case to be wholly frivolous, after conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. Mr. Barber's counsel has complied with his obligation under *Anders* and has identified issues for our review, although he has conceded that they are not legally viable.

### 1. Sufficiency of the Evidence

We agree with counsel that a challenge to the sufficiency of the evidence would be meritless. "We review de novo whether the prosecution presented sufficient evidence to support a conviction." *United States v. Avery*, 295 F.3d 1158, 1177 (10th Cir. 2002). "In conducting this review . . . we ask whether, taking the evidence-both direct and circumstantial, together with the reasonable inferences to be drawn therefrom--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* (quotations omitted). Three major categories of evidence support the jury's verdict against Mr. Barber: (1) his confession to the officers; (2) the stipulated facts in the record; and (3) the facts of the offense as related in the officers' testimony at trial. These facts plainly provide a basis for the jury's verdict.

Counsel argues that there were irregularities in connection with the confession, but he does not contend that it should have been suppressed. Officer Yelton testified that he read Mr. Barber his rights before he made his statement. There is no indication that he did not understand the advisement or that his confession was involuntary. The lack of a signed *Miranda* form and of a handwritten confession do not make the confession inadmissible. *See* 18 U.S.C. § 3501(e) (defining "confession" admissible in federal criminal proceedings to include both oral and written confessions); *United States v. Lugo*, 170 F.3d 996, 1004-05 (10th Cir. 1999) (stating *Miranda* waiver is not invalidated where it is oral rather than written).

In light of Mr. Barber's confession, Ms. Foreman's testimony did not prevent a reasonable jury from finding him guilty beyond a reasonable doubt. Moreover, the jury would have been entitled to discount her trial testimony, which differed from what she allegedly told Officer Yelton at the scene.

### 2. Double Jeopardy

Counsel argues that convicting Mr. Barber of both unlawful possession of a firearm by a convicted felon, and possession of a firearm in furtherance of a drug trafficking crime violated double jeopardy, because both offenses involved the use of the same firearm at the same time. This objection was not raised at trial and therefore a plain error standard applies. Plain error "is fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot

have been done." *United States v. Jones*, 530 F.3d 1292, 1299-1300 (10th Cir. 2008) (quotation omitted), *cert. denied*, 2008 WL 4537534 (U.S. Nov. 10, 2008) (No. 08-6696).  But there is no error here, much less plain error.

Ordinarily, the test in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) applies to such a double jeopardy claim, requiring us to ask whether each of the offenses for which the defendant was convicted required proof of a different element.  Here, the *Blockburger* test is satisfied, for the government was required to prove two such differing elements: Mr. Barber's conviction of a felony, which applied only to the possession of a firearm by a convicted felon charge; and his commission of a drug trafficking crime, which applied only to the possession of a firearm in furtherance of a drug trafficking crime charge.

Mr. Barber argues, however, that *Blockburger* doesn't apply to his case because he was punished under two provisions of the same statute, 18 U.S.C. § 924.  He cites *United States v. Johnson*, 130 F.3d 1420 (10th Cir. 1997), in which this court found multiplicitous the defendant's conviction for both being a felon in possession of a firearm, under 18 U.S.C. § 922(g)(1), and being an unlawful user of controlled substances in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3).  But *Johnson* is distinguished from this case.  In *Johnson*, this court concluded that Congress did not intend to punish a defendant for multiple violations of § 922(g) that arose out of the same factual predicate: possession of a firearm.  Here, although the definitions of both firearms offenses

cite 18 U.S.C. § 924, only the "possession of a firearm in furtherance of a drug trafficking crime" count actually is a § 924 offense. Section 924 merely provides a punishment provision for the other crime, "possession of a firearm by a convicted felon," which is charged under a separate statute, 18 U.S.C. § 922(g)(1). Therefore, Mr. Barber was not convicted of two firearms offenses under two different subsections of the same statute, as he claims. The *Blockburger* test applies and was satisfied. There was no double jeopardy.

### 3. Limitation of Cross-Examination

In his pro se brief, Mr. Barber argues that his trial counsel should have been permitted to inquire further of Officer Yelton "as to questions surrounding his sworn affidavit, and the execution of the search warrant." Aplt. Pro Se Br., at 6. The district court ruled these inquiries irrelevant. Mr. Barber fails to establish prejudice arising from the district court's failure to permit further cross-examination. He advances a conspiracy theory under which he was entirely innocent and framed by Officer Yelton and Mr. Checotah, who planted the drugs and the weapons to implicate him. *Id.* at 7. There was no evidence at trial that would have supported such a theory. It is only pure speculation on Mr. Barber's part that further cross-examination into the circumstances surrounding the issuance of the warrant would have revealed a conspiracy to frame him. This issue is therefore also frivolous.

**CONCLUSION**

After conducting a thorough and independent review of the record, we see no meritorious appellate issues. We GRANT counsel's motion to withdraw and AFFIRM Mr. Barber's conviction and sentence.

Entered for the Court


Michael W. McConnell
Circuit Judge