UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

HAROLD EUGENE BELL,

        Defendant - Appellant.

Nos. 97-6164
and 97-6167

ORDER
Filed September 4, 1998

Before SEYMOUR, ANDERSON, and LUCERO, Circuit Judges.

The opinion filed in this appeal on July 28, 1998, is amended to reflect a revision on page 11, lines two and three, of the court's slip opinion. A copy of the amended opinion is attached.

The mandate shall issue forthwith.

                      Entered for the Court
                      Patrick Fisher, Clerk of Court

                      By:
                        Keith Nelson
                        Deputy Clerk

F I L E D
United States Court of Appeals
Tenth Circuit

SEP 4 1998

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

        v.

HAROLD EUGENE BELL,

        Defendant - Appellant.

Nos. 97-6164
and 97-6167

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. CR-96-84-T)

John E. Dowdell, Norman, Wohlgemuth, Chandler & Dowdell, Tulsa, Oklahoma,
for appellant.

Frank Michael Ringer, Assistant U.S. Attorney (Patrick M. Ryan, United States
Attorney, with him on the briefs), Oklahoma City, Oklahoma.

Before **SEYMOUR**, **ANDERSON**, and **LUCERO**, Circuit Judges.

**ANDERSON**, Circuit Judge.

Following a jury trial, Harold Eugene Bell was convicted of conspiracy to

distribute cocaine powder and cocaine base, "crack," in violation of 21 U.S.C.

§§ 841(a)(1) and 846. In this consolidated appeal,[1] Bell contends that the evidence was insufficient to support his conviction. He also contends that, because his conviction was based on a general jury verdict which failed to specify the object of the conspiracy (*i.e.*, whether the conspiracy involved cocaine powder or whether it involved cocaine base), it must be reversed and the case must be remanded for a new trial. Alternatively, he contends that his sentence must be vacated, and that he must be resentenced under the assumption that the conspiracy involved only cocaine powder. We affirm.

## BACKGROUND

On May 21, 1996, Bell was indicted on one count of conspiracy "to possess with intent to distribute and to distribute cocaine powder and cocaine base, "crack", a Schedule II Controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)." R. Vol. I, Tab 5/21/96[2] at 2. As required by 21 U.S.C. § 851, the government filed an information to establish Bell's prior felony

---

[1]Bell filed two Notices of Appeal, each of which received a separate case number; subsequently, the clerk's office consolidated the cases.

[2]The documents in this record volume are not uniformly numbered and tabbed. Several documents are designated with tabs that specify only the date they were filed; others are designated with tabs that specify numbers corresponding to the docket numbers for this case.

drug offense convictions for purposes of invoking the increased sentence provisions for repeat offenders under 21 U.S.C. § 841. Id., Tab 1/13/97.

Three codefendants, Tayoun Bell (nicknamed "E. T."), Taleno Bowens (nicknamed "Nino"), and Aaron Gibson, were also named along with Bell in the conspiracy count of the indictment, as well as in separate counts charging distribution. However, on the day the trial began, Bell's codefendants entered into plea agreements: Tayoun Bell and Aaron Gibson each pleaded guilty to a distribution count, and Taleno Bowens pleaded guilty to the conspiracy count.

According to the undisputed trial testimony of Burgundy Pierce, in March 1995, Bell transported cocaine and crack cocaine from California and arrived at her apartment in Oklahoma City with the drugs taped to his body. R. Vol. III at 77. Bell met E. T. and Nino at the apartment, and the three men "cut [the crack cocaine] up and split it up and sold it." Id. at 78; see also id. at 77, 104. Bell and others, including Aaron Gibson, cooked the powder cocaine into crack cocaine, and then "cut it up and then bagged it up" for sale.[3] Id. at 79; see also id. at 87. From March through early May, Pierce observed that Bell would make trips back and forth from California to Oklahoma to bring in drugs for distribution to other

---

[3]In response to the government's question, "What happens when powder cocaine comes in," Pierce responded, "They usually cook it, and -- then in -- into a form of rock or crack cocaine, and then they sell it." R. Vol. III at 78-79. She testified that she saw Bell cooking powder cocaine into crack on about three or four occasions. Id. at 87.

-3-

dealers. Id. at 81-82. Although both Pierce and the prosecutor occasionally referred simply to the "drugs" which where being distributed and sold in Pierce's apartment, when the prosecutor specifically asked, "what drug . . . are you talking about," Pierce answered, "Crack cocaine." Id. at 87.

Apparently, Bell returned to California sometime in May 1995 and did not come back to Oklahoma. However, after he left, he made several long distance collect calls to Pierce's apartment, to direct others to pick up drugs for transport back to Oklahoma. On one occasion at the end of July, Bell called to ask Pierce to fly to California to pick up "a certain amount of drugs." Id. at 89. On at least four or five other occasions, he called the apartment and asked to speak to other dealers, generally E. T. or Nino. Id. at 105. During those calls, he would often ask E. T. to fly back and pick up "a certain amount of crack cocaine," to bring back to Oklahoma. Id. Although Pierce was not a party to those conversations, after the conversation ended, E. T. would generally tell the others about the conversation and ask if anyone wanted to go in on the deal.[4] Id.

Taleno Bowens ("Nino"), one of Bell's codefendants who had pleaded guilty to the conspiracy charge prior to trial, also testified for the government.

---

[4]Pierce also testified to receiving a mailed box which contained a coffeepot filled with powder cocaine. R. Vol. III at 80. However, neither that shipment of cocaine powder nor any other amounts of cocaine powder were quantified or attributed to Bell for sentencing purposes. See R. Vol. V; R. Vol. I, Tab 118 at 4, and discussion infra.

-4-

Bowens testified that he made his living selling crack cocaine, which he purchased from Bell and the other codefendants. Id. at 110. According to his undisputed testimony, on at least ten occasions, he purchased $200 quantities (six grams) of crack cocaine from Bell, and he purchased $500 quantities (thirteen grams) from Bell at least six times. Id. at 110-11, 115. Moreover, on two separate occasions Bell fronted Bowens two ounces of crack cocaine on credit. Id. at 115, 127. The street value of the fronted crack was at least $4800, id. at 118, and after Bowens sold the fronted crack, he paid Bell a total of $4000 for it. Id. at 127. Bowens also testified to seeing Bell with twelve ounces of crack cocaine taped to his body. Id. at 111.

Following Bell's conviction, a Presentence Investigation Report ("PSR") was prepared. See R. Vol. V. Based on the quantity of drugs involved (340.2 grams of cocaine base), the filed PSR sets Bell's offense level at 34, and then adds 2 points for possession of a firearm, for a total offense level of 36, and it sets Bell's criminal history category at VI.[5] See id. ¶¶ 19, 20, 39. In the

---

[5]Apparently the originally prepared PSR held Bell accountable both for the twelve ounces of crack that Bowens saw taped to Bell's body and also for the quantities of crack which Bowen purchased from Bell. However, in his Objections to Presentence Report, R. Vol. I, Tab 100 at 2-3, Bell contested the inclusion of both drug quantities, contending that:

> In the instant case the Defendant is assessed 555.6 grams of cocaine base for guideline purposes based on paragraphs 12 and 13

(continued...)

"Sentencing Options" section, the PSR noted that, pursuant to 21 U.S.C. § 841(b)(1)(A), Bell's conviction subjected him to a minimum term of 10 years imprisonment and a maximum term of life. R. Vol. V ¶ 75. However, the PSR further noted that "due to the sentencing enhancement filed under 21 U.S.C. § 851, the defendant shall be sentenced to a mandatory term of life imprisonment without release, pursuant to 21 U.S.C. § 841(b)(1)(A)." Id. Bell objected to the sentence enhancement, and at the sentencing hearing, his counsel argued that it was unconstitutional to single him out from his codefendants who had entered guilty pleas: "In this case we have three defendants, . . . and each of these defendants in this case was charged with, essentially, the same criminal conduct,

---

[5](...continued)
of the presentence report. Paragraph 12 assess[es] the Defendant with 215.4 grams of cocaine base based on the testimony of Taleno Bowens regarding purchases he allegedly made from the Defendant. Paragraph 13 assess[es] an additional 340.2 grams of cocaine base [based] again on the testimony of . . . Bowens that on one occasion, Bowens allegedly observed 12 ounces of cocaine base taped to the Defendant's body. There is no evidence that the 340.2 grams of cocaine base which Bowens claims to have seen taped to the Defendant is not the same quantity which Bowens later claimed to have purchased from the Defendant. . . . It is just as plausible that paragraphs 12 and 13 of the presentence report refer to the same quantity of drugs and therefore, the offense level should be 34 and not 36.

We presume the probation officer conceded the argument, since the filed PSR, which was used at the sentencing hearing and which indicates that it is a revised version, holds Bell accountable for only the twelve ounces (340.2 grams) of crack cocaine which Bowens saw taped to Bell's body. See R. Vol. V, ¶¶ 5-14.

which is distribution of crack cocaine." R. Vol. IV at 183. The district court overruled the constitutional objection, and Bell does not raise it on appeal. Id. at 187.

## DISCUSSION

A. Sufficiency of the Evidence

Bell contends that the evidence was insufficient to support his conviction for conspiracy. Sufficiency of the evidence presents a question of law which we review de novo. United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). We will affirm if the evidence and reasonable inferences drawn therefrom, viewed in the light most favorable to the government, would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. United States v. Johnson, 130 F.3d 1420, 1428 (10th Cir. 1997), petition for cert. filed, (U.S. Apr. 1, 1998) (No. 97-8558). In examining the evidence, we consider the collective inferences drawn from the evidence as a whole, and we will not overturn a conviction unless no reasonable jury could have reached the disputed verdict. Id.

"To find a defendant guilty of conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846, the jury must find, beyond a reasonable doubt, (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4)

interdependence among the alleged conspirators." United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997), cert. denied, 118 S. Ct. 1856 (1998).

Bell argues that the evidence merely shows a buyer-seller relationship. We disagree. In this case, the record contains ample evidence for a rational trier of fact to find each of the essential elements of conspiracy beyond a reasonable doubt. Thus, although there is no direct evidence of an agreement, a jury may infer an agreement constituting a conspiracy "'from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose.'" Id. (quoting United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994)). Here, the uncontroverted evidence showed that Bell brought in twelve ounces of crack cocaine to an apartment where E. T. and Nino, two of his alleged coconspirators, were waiting. Once Bell arrived, the three men split up the crack cocaine and packaged the drug in bags suitable for street sale. In fact, Nino did purchase amounts for street sale, and, moreover, on at least two occasions, Bell "fronted" him crack cocaine on credit.

Given the strong circumstantial evidence, the jury could have reasonably inferred that Bell, E. T., and Nino had agreed to distribute crack cocaine. Based on the same evidence, a reasonable jury could infer that Bell had knowledge of the essential objectives of the conspiracy. Id. at 1440 (noting that a jury may infer a defendant's guilty knowledge and voluntary participation from the

surrounding circumstances).  Moreover, since a jury may presume a defendant who acts in furtherance of the objective of the conspiracy is a knowing participant in that conspiracy, id., we conclude there was sufficient evidence to satisfy the third element.

Finally, "[i]nterdependence exists where each coconspirator's activities constitute essential and integral steps toward the realization of a common, illicit goal."  Id.  Here, the jury reasonably could have inferred that 1) through March, April, and part of May 1995, Bell was the primary courier who brought crack cocaine from California to Oklahoma; later, he was the person who arranged pick-ups for other couriers; 2) E. T. assisted Bell in arranging the deliveries and further distributions; and 3) Nino assisted both Bell and E. T. by purchasing the crack cocaine on a wholesale basis from them and then selling it on the street.  Thus, the jury reasonably could have inferred that E. T. and Nino were dependent on Bell to smuggle the crack cocaine in and Bell was dependent on them to assist in the distribution process once it arrived.  Accordingly, we conclude that there was sufficient evidence to support Bell's conviction for conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.

B. <u>The Jury Verdict and Sentencing</u>

Bell also contends that the jury's failure to specify the object of the conspiracy mandates reversal, or, at least, resentencing. However, Bell did not object to the jury instructions at trial, or to the general verdict form. Neither did he object to the alleged defect at sentencing, nor to the relevant factual statements in the PSR which specifically held him accountable for quantities of cocaine base. Because Bell failed to make timely objections, we review for plain error only. <u>See</u> Fed. R. Crim. P. 52(b); <u>United States v. Svacina</u>, 137 F.3d 1179, 1185-86 (10th Cir. 1998); <u>United States v. Janusz</u>, 135 F.3d 1319, 1322 (10th Cir. 1998). Under this standard, Bell must show that a clear and obvious error affected his substantial rights and seriously affected the integrity of his judicial proceedings. <u>See</u> <u>Johnson v. United States</u>, 520 U.S. 461, ___, 117 S. Ct. 1544, 1548-50 (1997) (citing <u>United States v. Olano</u>, 507 U.S. 725, 732-36 (1993)). In all cases, the defendant bears the burden of demonstrating that he was prejudiced by the error before this court can grant relief. <u>Olano</u>, 507 U.S. at 734.

1. <u>The Conviction</u>

Bell first contends that, because the general verdict fails to designate the particular object(s) of the conspiracy upon which the jury based its finding of guilt, his conviction must be reversed and his case must be remanded for a new trial. In support he cites <u>Newman v. United States</u>, 817 F.2d 635, 639 (10th Cir.

1987), which found that similar circumstances created an uncertainty which tainted the conviction itself. <u>See</u> Appellant's Br. at 20. However, our more recent cases have clearly held that such an argument "has been foreclosed by the Supreme Court in <u>Griffin v. United States</u>, 502 U.S. 46 (1991)." <u>United States v. Linn</u>, 31 F.3d 987, 990 (10th Cir. 1994). Thus, in <u>Linn</u> we explained that, if an indictment charges several acts in the conjunctive, the jury's "verdict stands if the evidence is sufficient with respect to any one of the acts charged." <u>Id.</u> (quoting <u>Griffin</u>, 502 U.S. at 56-57 (internal quotations omitted)).

Therefore, because we have already concluded in the preceding section that the evidence was sufficient to support Bell's conviction for conspiracy to distribute crack cocaine, we necessarily find that the jury's verdict, and Bell's conviction will stand.

2. <u>The Sentence</u>

Alternatively, Bell argues that his sentence should be vacated and that he must be resentenced under the presumption that the jury found him guilty of a conspiracy involving cocaine powder only. In support, he cites <u>United States v. Pace</u>, 981 F.2d 1123 (10th Cir. 1992). <u>See</u> Appellant's Br. at 20-21. Bell is correct in noting <u>Pace's</u> holding that, notwithstanding the defendants' failure to object, their conspiracy sentences could not stand because of the possibility that the jury might have found them guilty of a conspiracy involving only the drug

carrying the lesser penalty.  Pace, 981 F.2d at 1128-29.  That is, historically this circuit has found plain error in circumstances similar to Bell's—where an indictment charged dual objects of a conspiracy, the jury failed to specify the particular conspiracy object upon which it based its guilty verdict, and the court based its sentence upon the object bearing the greater penalty.  See id.  But cf. Johnson, 130 F.3d at 1428 (involving a drug distribution rather than a conspiracy charge and upholding an instruction that required the jury to find only that defendant distributed a "controlled substance").[6]

However, while this appeal was pending, the Supreme Court issued its opinion in Edwards v. United States, 118 S. Ct. 1475 (1998).  As in this case,

_____

[6]Johnson involved a defendant's claim that the district court erred in giving the noted instruction and in refusing to give the defendant's proposed instruction stating that the government was required to prove that the substance sold was cocaine base.  Johnson, 130 F.3d at 1428.  Quoting United States v. Deisch, 20 F.3d 139, 151 (5th Cir. 1994), we stated "'the identity of the involved controlled substance as being "cocaine base" rather than simply "cocaine" is not an element of any section 841(a)(1) offense.'"  Johnson, 130 F.3d at 1428.  Thus, Johnson concluded that "'the indictment need only allege, and the jury need only find, that the substance was cocaine, and whether or not it was the "cocaine base" form of cocaine is purely a sentencing factor.'"  Id. (quoting Deisch, 20 F.3d at 151).

While Johnson may have cast doubt upon our previous analysis respecting dual-object conspiracies to violate § 841, Johnson did not (and could not, without en banc consideration) overrule Newman or Pace.  See In re Smith, 10 F.3d 723, 724 (10th Cir. 1993).  However, since Edwards v. United States, 118 S. Ct. 1475 (1998), directly implicates Tenth Circuit precedent respecting dual-object conspiracies, see discussion infra, this panel is now free to reconsider the issue in light of the superseding Supreme Court opinion.  In re Smith, 10 F.3d at 724; Hurd v. Pittsburg State Univ., 109 F.3d 1540, 1542 (10th Cir. 1997).

Edwards concerned an indictment for conspiracy to distribute cocaine powder and cocaine base, the jury instructions informed the jury that it could convict if it concluded that the conspiracy involved "cocaine or cocaine base," the jury returned a general verdict of guilty, and the district court imposed sentences based on its findings regarding the substances involved. See Edwards, 118 S. Ct. at 1475-76. For the first time on appeal to the Seventh Circuit, the defendants claimed that they were entitled to a new trial, or, alternatively, to resentencing on the assumption that the cocaine was powder. Id. at 1476. The Seventh Circuit rejected the claim, finding no error, "and hence no plain error." United States v. Edwards, 105 F.3d 1179, 1180-82 (7th Cir. 1997) (specifically disapproving our contrary approach and holdings in Pace and Newman.). While the Supreme Court does not specifically use the term "plain error" in its opinion, after analyzing the particular circumstances of the case, the Court finds no error requiring review. Edwards, 118 S. Ct. at 1478 ("It is sufficient for present purposes, however, to point out that petitioners did not make this particular argument in the District Court. . . .  For these reasons, we need not, and we do not, consider the merits of petitioners' statutory and constitutional claims.").[7]

---

[7]Because the Edwards opinion issued only a month prior to oral argument, when all briefs had been filed, at oral argument we directed counsel to file supplemental briefs regarding Edwards' applicability to this case. We have received and considered those briefs.

Thus, rejecting this circuit's general approach, <u>Edwards</u> settled the conflict

among the circuits:

> We agree that in the circumstances of this case the judge was authorized to determine for sentencing purposes whether crack, as well as cocaine, was involved in the offense-related activities. The Sentencing Guidelines instruct the judge in a case like this one to determine both the amount and the kind of "controlled substances" for which a defendant should be held accountable--and then to impose a sentence that varies depending upon amount and kind. Consequently, regardless of the jury's actual, or assumed, beliefs about the conspiracy, the Guidelines nonetheless require the judge to determine whether the "controlled substances" at issue--and how much of those substances--consisted of cocaine, crack, or both. And that is what the judge did in this case.

<u>Id.</u> at 1477 (internal citations omitted). Explaining its rejection of the petitioners'

argument that the drug statutes and Constitution required the judge to assume that

the jury convicted them of a conspiracy involving only cocaine, the Court further

stated that

> even if [the petitioners] are correct, it would make no difference to their case. That is because the Guidelines instruct a sentencing judge to base a drug-conspiracy offender's sentence on the offender's "relevant conduct." USSG § 1B1.3. And "relevant conduct," in a case like this, includes both conduct that constitutes the "offense of conviction," <u>id.</u>, § 1B1.3(a)(1), and conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction," <u>id.</u>, § 1B1.3(a)(2). Thus, the sentencing judge here would have had to determine the total amount of drugs, determine whether the drugs consisted of cocaine, crack or both, and determine the total amount of each--regardless of whether the judge believed that petitioners' crack-related conduct was part of the "offense of conviction," or the judge believed that it was "part of the same

course of conduct, or common scheme or plan." The Guidelines sentencing range--on either belief--is identical.

Id. Edwards thus frames our analysis in a manner which is consistent with our reasoning in Johnson, 130 F.3d at 1428, respecting violations of § 841(a)(1).

However, having concluded that, generally, the offense of conviction does not control the sentencing court's determinations, the Court in Edwards immediately added the proviso that

> petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy. That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines. USSG § 5G1.1. But, as the Government points out, the sentences imposed here were within the statutory limits applicable to a cocaine-only conspiracy, given the quantities of that drug attributed to each petitioner. Brief for United States 15-16, and nn. 6-7; see 21 U.S.C. §§ 841(b)(1)-(3); App. 42-47, 72-82, 107-112, 136-141, 163-169 (cocaine attributed to each petitioner). Cf. United States v. Orozco-Prada, 732 F.2d 1076, 1083-1084 (C.A.2 1984) (court may not sentence defendant under statutory penalties for cocaine conspiracy when jury may have found only marijuana conspiracy). Petitioners' statutory and constitutional claims also could have made a difference had it been possible to argue that their crack-related activities did not constitute part of the "same course of conduct, or common scheme, or plan." . . . But petitioners have not made this argument, and, after reviewing the record (which shows a series of interrelated drug transactions involving both cocaine and crack), we do not see how any such claim could succeed.

Id. at 1477-78.

Couching his supplemental brief argument in terms of the above paragraph, Bell contends that his case is, in fact, the above exception cited in Edwards. Thus, Bell contends that the district court simply made no findings at all regarding the quantities or drugs involved in his conspiracy conviction. In particular, he argues that, unlike Edwards, in his case, his claims do make a difference, since it is impossible to say that the sentence he received is within the statutory limits applicable to a cocaine-only conspiracy.[8] Appellant's Supp. Br. at 7-8. Specifically, he notes that the record contains no findings regarding any amounts of cocaine powder attributable to him. Id.

While Bell is correct in stating that the record contains no findings regarding any quantities of cocaine powder which could be attributed to him, his statement regarding other factual findings is wrong. The court's filed judgment clearly recites that "[t]he court adopts the factual findings and guideline application in the presentence report." R. Vol. I, Tab 118 at 4. As noted, that report attributed 340.2 grams of crack cocaine to Bell. Moreover, the quantity attributed is based upon Bell's own objections and reflects the precise amount he

---

[8]Under 21 U.S.C. § 841(b)(1)(A), a violation involving 5 kilograms or more of cocaine or 50 grams or more of cocaine base yields a mandatory life sentence for third-time offenders. Under § 841(b)(1)(B), any violation involving 500 grams or more of cocaine yields a sentence of between 10 years and life if the defendant has any prior convictions. Under § 841(b)(1)(C), except as set forth in the prior subsections, a conviction involving cocaine powder yields a maximum sentence of thirty years if the defendant has any prior convictions.

urged. See id., Tab 100 at 2-3. In fact, Bell's own arguments, filings, and representations before the court make it clear that, at all times, he, the jury, and the court fully understood and appreciated that the object of the conspiracy was the distribution of cocaine base.[9] Under the circumstances, the court's adoption of the PSR's findings was not plain error.

Moreover, unlike the situation excepted by Edwards, Bell's case does not involve any ambiguity.[10] Although the trial transcript contains generic references

---

[9]By contrast, the illustrative case which Edwards cites in support of its proviso regarding the statutory trumping of guideline sentences involved a situation in which the jury's verdict was truly ambiguous to the defendant's detriment. That is, although the evidence presented in Orozco-Prada contained a single statement which might have supported a finding of cocaine transactions, the government conceded that the most compelling evidence adduced at trial would have supported a conviction based only on a marijuana transaction. See Orozco-Prada, 732 F.2d at 1083. Additionally, although we are unable to determine the exact procedural posture of Orozco-Prada, the cases which it cites and upon which it relies clearly involve review of appropriately preserved objections. See id. (citing United States v. Quicksey, 525 F.2d 337 (4th Cir. 1975) and Brown v. United States, 299 F.2d 438 (D.C. Cir. 1962).

[10]Certainly, there was no uncertainty in the mind of Bell's counsel at trial when he successfully argued the exclusion of evidence of marijuana purchases:

> It has nothing to do with this specific conspiracy. We're
> talking about a crack cocaine conspiracy here, and I
> think it would be absolutely prejudicial if we had any
> testimony about any kind of purchases of marijuana from
> my client. It has nothing to do with this particular case.

R. Vol. III at 136 (emphasis added). Later, at sentencing, counsel stated that Bell and his codefendants had been charged with, essentially "the same criminal

(continued...)

-17-

to drugs and cocaine, the evidence relating to Bell's distribution and conspiracy to distribute clearly involves cocaine base or crack. To the extent that the evidence indicated that Bell brought in cocaine powder along with cocaine base, the same undisputed evidence established that, when powder cocaine did come in, Bell or others "cooked" the powder into crack. See R. Vol. III at 78-79, 87.

Accordingly, we conclude that, in light of the overwhelming evidence of Bell's involvement in a conspiracy whose object was the distribution of crack cocaine and the district court's findings regarding the amount of crack cocaine attributable to him, Bell has failed to demonstrate any clear and obvious error which "seriously affect[ed] the fairness, integrity or public reputation of [his] judicial proceedings." Johnson, 117 S. Ct. at 1550 (internal quotations omitted). Therefore, as in Edwards, "we need not, and we do not, consider the merits of [Bell's] statutory and constitutional claims" which he raises for the first time on appeal. Edwards, 118 S. Ct. at 1478.

AFFIRMED.

---

[10](...continued)
conduct, which is distribution of crack cocaine." R. Vol. IV at 183.

PUBLISH

F I L E D

United States Court of Appeals
Tenth Circuit

JUL 28 1998

PATRICK FISHER
Clerk

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HAROLD EUGENE BELL,

Defendant - Appellant.

Nos. 97-6164
and 97-6167

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA
## (D.C. NO. CR-96-84-T)

John E. Dowdell, Norman, Wohlgemuth, Chandler & Dowdell, Tulsa, Oklahoma, for appellant.

Frank Michael Ringer, Assistant U.S. Attorney (Patrick M. Ryan, United States Attorney, with him on the briefs), Oklahoma City, Oklahoma.

Before **SEYMOUR**, **ANDERSON**, and **LUCERO**, Circuit Judges.

**ANDERSON**, Circuit Judge.

Following a jury trial, Harold Eugene Bell was convicted of conspiracy to distribute cocaine powder and cocaine base, "crack," in violation of 21 U.S.C.

§§ 841(a)(1) and 846.  In this consolidated appeal,[1] Bell contends that the evidence was insufficient to support his conviction.  He also contends that, because his conviction was based on a general jury verdict which failed to specify the object of the conspiracy (*i.e.*, whether the conspiracy involved cocaine powder or whether it involved cocaine base), it must be reversed and the case must be remanded for a new trial.  Alternatively, he contends that his sentence must be vacated, and that he must be resentenced under the assumption that the conspiracy involved only cocaine powder.  We affirm.

**BACKGROUND**

On May 21, 1996, Bell was indicted on one count of conspiracy "to possess with intent to distribute and to distribute cocaine powder and cocaine base, "crack", a Schedule II Controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)."  R. Vol. I, Tab 5/21/96[2] at 2.  As required by 21 U.S.C. § 851, the government filed an information to establish Bell's prior felony

---

[1]Bell filed two Notices of Appeal, each of which received a separate case number; subsequently, the clerk's office consolidated the cases.

[2]The documents in this record volume are not uniformly numbered and tabbed.  Several documents are designated with tabs that specify only the date they were filed; others are designated with tabs that specify numbers corresponding to the docket numbers for this case.

drug offense convictions for purposes of invoking the increased sentence provisions for repeat offenders under 21 U.S.C. § 841. Id., Tab 1/13/97.

Three codefendants, Tayoun Bell (nicknamed "E. T."), Taleno Bowens (nicknamed "Nino"), and Aaron Gibson, were also named along with Bell in the conspiracy count of the indictment, as well as in separate counts charging distribution. However, on the day the trial began, Bell's codefendants entered into plea agreements: Tayoun Bell and Aaron Gibson each pleaded guilty to a distribution count, and Taleno Bowens pleaded guilty to the conspiracy count.

According to the undisputed trial testimony of Burgundy Pierce, in March 1995, Bell transported cocaine and crack cocaine from California and arrived at her apartment in Oklahoma City with the drugs taped to his body. R. Vol. III at 77. Bell met E. T. and Nino at the apartment, and the three men "cut [the crack cocaine] up and split it up and sold it." Id. at 78; see also id. at 77, 104. Bell and others, including Aaron Gibson, cooked the powder cocaine into crack cocaine, and then "cut it up and then bagged it up" for sale.[3] Id. at 79; see also id. at 87. From March through early May, Pierce observed that Bell would make trips back and forth from California to Oklahoma to bring in drugs for distribution to other

---

[3]In response to the government's question, "What happens when powder cocaine comes in," Pierce responded, "They usually cook it, and -- then in -- into a form of rock or crack cocaine, and then they sell it." R. Vol. III at 78-79. She testified that she saw Bell cooking powder cocaine into crack on about three or four occasions. Id. at 87.

-3-

dealers. Id. at 81-82. Although both Pierce and the prosecutor occasionally referred simply to the "drugs" which where being distributed and sold in Pierce's apartment, when the prosecutor specifically asked, "what drug . . . are you talking about," Pierce answered, "Crack cocaine." Id. at 87.

Apparently, Bell returned to California sometime in May 1995 and did not come back to Oklahoma. However, after he left, he made several long distance collect calls to Pierce's apartment, to direct others to pick up drugs for transport back to Oklahoma. On one occasion at the end of July, Bell called to ask Pierce to fly to California to pick up "a certain amount of drugs." Id. at 89. On at least four or five other occasions, he called the apartment and asked to speak to other dealers, generally E. T. or Nino. Id. at 105. During those calls, he would often ask E. T. to fly back and pick up "a certain amount of crack cocaine," to bring back to Oklahoma. Id. Although Pierce was not a party to those conversations, after the conversation ended, E. T. would generally tell the others about the conversation and ask if anyone wanted to go in on the deal.[4] Id.

Taleno Bowens ("Nino"), one of Bell's codefendants who had pleaded guilty to the conspiracy charge prior to trial, also testified for the government.

---

[4]Pierce also testified to receiving a mailed box which contained a coffeepot filled with powder cocaine. R. Vol. III at 80. However, neither that shipment of cocaine powder nor any other amounts of cocaine powder were quantified or attributed to Bell for sentencing purposes. See R. Vol. V; R. Vol. I, Tab 118 at 4, and discussion infra.

Bowens testified that he made his living selling crack cocaine, which he purchased from Bell and the other codefendants. Id. at 110. According to his undisputed testimony, on at least ten occasions, he purchased $200 quantities (six grams) of crack cocaine from Bell, and he purchased $500 quantities (thirteen grams) from Bell at least six times. Id. at 110-11, 115. Moreover, on two separate occasions Bell fronted Bowens two ounces of crack cocaine on credit. Id. at 115, 127. The street value of the fronted crack was at least $4800, id. at 118, and after Bowens sold the fronted crack, he paid Bell a total of $4000 for it. Id. at 127. Bowens also testified to seeing Bell with twelve ounces of crack cocaine taped to his body. Id. at 111.

Following Bell's conviction, a Presentence Investigation Report ("PSR") was prepared. See R. Vol. V. Based on the quantity of drugs involved (340.2 grams of cocaine base), the filed PSR sets Bell's offense level at 34, and then adds 2 points for possession of a firearm, for a total offense level of 36, and it sets Bell's criminal history category at VI.[5] See id. ¶¶ 19, 20, 39. In the

---

[5]Apparently the originally prepared PSR held Bell accountable both for the twelve ounces of crack that Bowens saw taped to Bell's body and also for the quantities of crack which Bowen purchased from Bell. However, in his Objections to Presentence Report, R. Vol. I, Tab 100 at 2-3, Bell contested the inclusion of both drug quantities, contending that:

> In the instant case the Defendant is assessed 555.6 grams of
> cocaine base for guideline purposes based on paragraphs 12 and 13
> (continued...)

-5-

"Sentencing Options" section, the PSR noted that, pursuant to 21 U.S.C. § 841(b)(1)(A), Bell's conviction subjected him to a minimum term of 10 years imprisonment and a maximum term of life. R. Vol. V ¶ 75. However, the PSR further noted that "due to the sentencing enhancement filed under 21 U.S.C. § 851, the defendant shall be sentenced to a mandatory term of life imprisonment without release, pursuant to 21 U.S.C. § 841(b)(1)(A)." Id. Bell objected to the sentence enhancement, and at the sentencing hearing, his counsel argued that it was unconstitutional to single him out from his codefendants who had entered guilty pleas: "In this case we have three defendants, . . . and each of these defendants in this case was charged with, essentially, the same criminal conduct,

---

[5](...continued)
of the presentence report. Paragraph 12 assess[es] the Defendant with 215.4 grams of cocaine base based on the testimony of Taleno Bowens regarding purchases he allegedly made from the Defendant. Paragraph 13 assess[es] an additional 340.2 grams of cocaine base [based] again on the testimony of . . . Bowens that on one occasion, Bowens allegedly observed 12 ounces of cocaine base taped to the Defendant's body. There is no evidence that the 340.2 grams of cocaine base which Bowens claims to have seen taped to the Defendant is not the same quantity which Bowens later claimed to have purchased from the Defendant. . . . It is just as plausible that paragraphs 12 and 13 of the presentence report refer to the same quantity of drugs and therefore, the offense level should be 34 and not 36.

We presume the probation officer conceded the argument, since the filed PSR, which was used at the sentencing hearing and which indicates that it is a revised version, holds Bell accountable for only the twelve ounces (340.2 grams) of crack cocaine which Bowens saw taped to Bell's body. See R. Vol. V, ¶¶ 5-14.

which is distribution of crack cocaine." R. Vol. IV at 183. The district court overruled the constitutional objection, and Bell does not raise it on appeal. Id. at 187.

## DISCUSSION

A. Sufficiency of the Evidence

Bell contends that the evidence was insufficient to support his conviction for conspiracy. Sufficiency of the evidence presents a question of law which we review de novo. United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). We will affirm if the evidence and reasonable inferences drawn therefrom, viewed in the light most favorable to the government, would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. United States v. Johnson, 130 F.3d 1420, 1428 (10th Cir. 1997), petition for cert. filed, (U.S. Apr. 1, 1998) (No. 97-8558). In examining the evidence, we consider the collective inferences drawn from the evidence as a whole, and we will not overturn a conviction unless no reasonable jury could have reached the disputed verdict. Id.

"To find a defendant guilty of conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846, the jury must find, beyond a reasonable doubt, (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4)

interdependence among the alleged conspirators." United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997), cert. denied, 118 S. Ct. 1856 (1998).

Bell argues that the evidence merely shows a buyer-seller relationship. We disagree. In this case, the record contains ample evidence for a rational trier of fact to find each of the essential elements of conspiracy beyond a reasonable doubt. Thus, although there is no direct evidence of an agreement, a jury may infer an agreement constituting a conspiracy "'from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose.'" Id. (quoting United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994)). Here, the uncontroverted evidence showed that Bell brought in twelve ounces of crack cocaine to an apartment where E. T. and Nino, two of his alleged coconspirators, were waiting. Once Bell arrived, the three men split up the crack cocaine and packaged the drug in bags suitable for street sale. In fact, Nino did purchase amounts for street sale, and, moreover, on at least two occasions, Bell "fronted" him crack cocaine on credit.

Given the strong circumstantial evidence, the jury could have reasonably inferred that Bell, E. T., and Nino had agreed to distribute crack cocaine. Based on the same evidence, a reasonable jury could infer that Bell had knowledge of the essential objectives of the conspiracy. Id. at 1440 (noting that a jury may infer a defendant's guilty knowledge and voluntary participation from the

surrounding circumstances).  Moreover, since a jury may presume a defendant who acts in furtherance of the objective of the conspiracy is a knowing participant in that conspiracy, id., we conclude there was sufficient evidence to satisfy the third element.

Finally, "[i]nterdependence exists where each coconspirator's activities constitute essential and integral steps toward the realization of a common, illicit goal."  Id.  Here, the jury reasonably could have inferred that 1) through March, April, and part of May 1995, Bell was the primary courier who brought crack cocaine from California to Oklahoma; later, he was the person who arranged pick-ups for other couriers; 2) E. T. assisted Bell in arranging the deliveries and further distributions; and 3) Nino assisted both Bell and E. T. by purchasing the crack cocaine on a wholesale basis from them and then selling it on the street. Thus, the jury reasonably could have inferred that E. T. and Nino were dependent on Bell to smuggle the crack cocaine in and Bell was dependent on them to assist in the distribution process once it arrived.  Accordingly, we conclude that there was sufficient evidence to support Bell's conviction for conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.

B.  The Jury Verdict and Sentencing

Bell also contends that the jury's failure to specify the object of the conspiracy mandates reversal, or, at least, resentencing.  However, Bell did not object to the jury instructions at trial, or to the general verdict form.  Neither did he object to the alleged defect at sentencing, nor to the relevant factual statements in the PSR which specifically held him accountable for quantities of cocaine base.  Because Bell failed to make timely objections, we review for plain error only.  See Fed. R. Crim. P. 52(b); United States v. Svacina, 137 F.3d 1179, 1185-86 (10th Cir. 1998); United States v. Janusz, 135 F.3d 1319, 1322 (10th Cir. 1998).  Under this standard, Bell must show that a clear and obvious error affected his substantial rights and seriously affected the integrity of his judicial proceedings.  See Johnson v. United States, 520 U.S. 461, ___, 117 S. Ct. 1544, 1548-50 (1997) (citing United States v. Olano, 507 U.S. 725, 732-36 (1993)).  In all cases, the defendant bears the burden of demonstrating that he was prejudiced by the error before this court can grant relief.  Olano, 507 U.S. at 734.

1.  The Conviction

Bell first contends that, because the general verdict fails to designate the particular object(s) of the conspiracy upon which the jury based its finding of guilt, his conviction must be reversed and his case must be remanded for a new trial.  In support he cites Newman v. United States, 817 F.2d 635, 639 (10th Cir.

-10-

1987), which found that similar circumstances created an uncertainty which tainted the conviction itself. See Appellant's Br. at 20. However, Bell fails to note our more recent cases which have recognized that his argument "has been foreclosed by the Supreme Court in Griffin v. United States, 502 U.S. 46 (1991)." United States v. Linn, 31 F.3d 987, 990 (10th Cir. 1994). Thus, in Linn we explained that, if an indictment charges several acts in the conjunctive, the jury's "verdict stands if the evidence is sufficient with respect to any one of the acts charged." Id. (quoting Griffin, 502 U.S. at 56-57 (internal quotations omitted)).

Therefore, because we have already concluded in the preceding section that the evidence was sufficient to support Bell's conviction for conspiracy to distribute crack cocaine, we necessarily find that the jury's verdict, and Bell's conviction will stand.

### 2. The Sentence

Alternatively, Bell argues that his sentence should be vacated and that he must be resentenced under the presumption that the jury found him guilty of a conspiracy involving cocaine powder only. In support, he cites United States v. Pace, 981 F.2d 1123 (10th Cir. 1992). See Appellant's Br. at 20-21. Bell is correct in noting Pace's holding that, notwithstanding the defendants' failure to object, their conspiracy sentences could not stand because of the possibility that the jury might have found them guilty of a conspiracy involving only the drug

-11-

carrying the lesser penalty.  Pace, 981 F.2d at 1128-29.  That is, historically this circuit has found plain error in circumstances similar to Bell's—where an indictment charged dual objects of a conspiracy, the jury failed to specify the particular conspiracy object upon which it based its guilty verdict, and the court based its sentence upon the object bearing the greater penalty.  See id.  But cf. Johnson, 130 F.3d at 1428 (involving a drug distribution rather than a conspiracy charge and upholding an instruction that required the jury to find only that defendant distributed a "controlled substance").[6]

However, while this appeal was pending, the Supreme Court issued its opinion in Edwards v. United States, 118 S. Ct. 1475 (1998).  As in this case,

[6]Johnson involved a defendant's claim that the district court erred in giving the noted instruction and in refusing to give the defendant's proposed instruction stating that the government was required to prove that the substance sold was cocaine base.  Johnson, 130 F.3d at 1428.  Quoting United States v. Deisch, 20 F.3d 139, 151 (5th Cir. 1994), we stated "'the identity of the involved controlled substance as being "cocaine base" rather than simply "cocaine" is not an element of any section 841(a)(1) offense.'"  Johnson, 130 F.3d at 1428.  Thus, Johnson concluded that "'the indictment need only allege, and the jury need only find, that the substance was cocaine, and whether or not it was the "cocaine base" form of cocaine is purely a sentencing factor.'"  Id. (quoting Deisch, 20 F.3d at 151).

While Johnson may have cast doubt upon our previous analysis respecting dual-object conspiracies to violate § 841, Johnson did not (and could not, without en banc consideration) overrule Newman or Pace.  See In re Smith, 10 F.3d 723, 724 (10th Cir. 1993).  However, since Edwards v. United States, 118 S. Ct. 1475 (1998), directly implicates Tenth Circuit precedent respecting dual-object conspiracies, see discussion infra, this panel is now free to reconsider the issue in light of the superseding Supreme Court opinion.  In re Smith, 10 F.3d at 724; Hurd v. Pittsburg State Univ., 109 F.3d 1540, 1542 (10th Cir. 1997).

-12-

Edwards concerned an indictment for conspiracy to distribute cocaine powder and cocaine base, the jury instructions informed the jury that it could convict if it concluded that the conspiracy involved "cocaine or cocaine base," the jury returned a general verdict of guilty, and the district court imposed sentences based on its findings regarding the substances involved. See Edwards, 118 S. Ct. at 1475-76. For the first time on appeal to the Seventh Circuit, the defendants claimed that they were entitled to a new trial, or, alternatively, to resentencing on the assumption that the cocaine was powder. Id. at 1476. The Seventh Circuit rejected the claim, finding no error, "and hence no plain error." United States v. Edwards, 105 F.3d 1179, 1180-82 (7th Cir. 1997) (specifically disapproving our contrary approach and holdings in Pace and Newman.). While the Supreme Court does not specifically use the term "plain error" in its opinion, after analyzing the particular circumstances of the case, the Court finds no error requiring review. Edwards, 118 S. Ct. at 1478 ("It is sufficient for present purposes, however, to point out that petitioners did not make this particular argument in the District Court. . . . For these reasons, we need not, and we do not, consider the merits of petitioners' statutory and constitutional claims.").[7]

_____

[7]Because the Edwards opinion issued only a month prior to oral argument, when all briefs had been filed, at oral argument we directed counsel to file supplemental briefs regarding Edwards' applicability to this case. We have received and considered those briefs.

-13-

Thus, rejecting this circuit's general approach, Edwards settled the conflict among the circuits:

> We agree that in the circumstances of this case the judge was authorized to determine for sentencing purposes whether crack, as well as cocaine, was involved in the offense-related activities. The Sentencing Guidelines instruct the judge in a case like this one to determine both the amount and the kind of "controlled substances" for which a defendant should be held accountable--and then to impose a sentence that varies depending upon amount and kind. Consequently, regardless of the jury's actual, or assumed, beliefs about the conspiracy, the Guidelines nonetheless require the judge to determine whether the "controlled substances" at issue--and how much of those substances--consisted of cocaine, crack, or both. And that is what the judge did in this case.

Id. at 1477 (internal citations omitted). Explaining its rejection of the petitioners' argument that the drug statutes and Constitution required the judge to assume that the jury convicted them of a conspiracy involving only cocaine, the Court further stated that

> even if [the petitioners] are correct, it would make no difference to their case. That is because the Guidelines instruct a sentencing judge to base a drug-conspiracy offender's sentence on the offender's "relevant conduct." USSG § 1B1.3. And "relevant conduct," in a case like this, includes both conduct that constitutes the "offense of conviction," id., § 1B1.3(a)(1), and conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction," id., § 1B1.3(a)(2). Thus, the sentencing judge here would have had to determine the total amount of drugs, determine whether the drugs consisted of cocaine, crack or both, and determine the total amount of each--regardless of whether the judge believed that petitioners' crack-related conduct was part of the "offense of conviction," or the judge believed that it was "part of the same

-14-

course of conduct, or common scheme or plan."  The Guidelines sentencing range--on either belief--is identical.

Id.  Edwards thus frames our analysis in a manner which is consistent with our reasoning in Johnson, 130 F.3d at 1428, respecting violations of § 841(a)(1).

However, having concluded that, generally, the offense of conviction does not control the sentencing court's determinations, the Court in Edwards immediately added the proviso that

> petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy.  That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines.  USSG § 5G1.1.  But, as the Government points out, the sentences imposed here were within the statutory limits applicable to a cocaine-only conspiracy, given the quantities of that drug attributed to each petitioner.  Brief for United States 15-16, and nn. 6-7; see  21 U.S.C. §§  841(b)(1)-(3); App. 42-47, 72-82, 107-112, 136-141, 163-169 (cocaine attributed to each petitioner).  Cf. United States v. Orozco-Prada, 732 F.2d 1076, 1083-1084 (C.A.2 1984) (court may not sentence defendant under statutory penalties for cocaine conspiracy when jury may have found only marijuana conspiracy). Petitioners' statutory and constitutional claims also could have made a difference had it been possible to argue that their crack-related activities did not constitute part of the "same course of conduct, or common scheme, or plan." . . .  But petitioners have not made this argument, and, after reviewing the record (which shows a series of interrelated drug transactions involving both cocaine and crack), we do not see how any such claim could succeed.

Id. at 1477-78.

-15-

Couching his supplemental brief argument in terms of the above paragraph, Bell contends that his case is, in fact, the above exception cited in Edwards. Thus, Bell contends that the district court simply made no findings at all regarding the quantities or drugs involved in his conspiracy conviction. In particular, he argues that, unlike Edwards, in his case, his claims do make a difference, since it is impossible to say that the sentence he received is within the statutory limits applicable to a cocaine-only conspiracy.[8] Appellant's Supp. Br. at 7-8. Specifically, he notes that the record contains no findings regarding any amounts of cocaine powder attributable to him. Id.

While Bell is correct in stating that the record contains no findings regarding any quantities of cocaine powder which could be attributed to him, his statement regarding other factual findings is wrong. The court's filed judgment clearly recites that "[t]he court adopts the factual findings and guideline application in the presentence report." R. Vol. I, Tab 118 at 4. As noted, that report attributed 340.2 grams of crack cocaine to Bell. Moreover, the quantity attributed is based upon Bell's own objections and reflects the precise amount he

_____

[8]Under 21 U.S.C. § 841(b)(1)(A), a violation involving 5 kilograms or more of cocaine or 50 grams or more of cocaine base yields a mandatory life sentence for third-time offenders. Under § 841(b)(1)(B), any violation involving 500 grams or more of cocaine yields a sentence of between 10 years and life if the defendant has any prior convictions. Under § 841(b)(1)(C), except as set forth in the prior subsections, a conviction involving cocaine powder yields a maximum sentence of thirty years if the defendant has any prior convictions.

urged. See id., Tab 100 at 2-3. In fact, Bell's own arguments, filings, and representations before the court make it clear that, at all times, he, the jury, and the court fully understood and appreciated that the object of the conspiracy was the distribution of cocaine base.[9] Under the circumstances, the court's adoption of the PSR's findings was not plain error.

Moreover, unlike the situation excepted by Edwards, Bell's case does not involve any ambiguity.[10] Although the trial transcript contains generic references

---

[9]By contrast, the illustrative case which Edwards cites in support of its proviso regarding the statutory trumping of guideline sentences involved a situation in which the jury's verdict was truly ambiguous to the defendant's detriment. That is, although the evidence presented in Orozco-Prada contained a single statement which might have supported a finding of cocaine transactions, the government conceded that the most compelling evidence adduced at trial would have supported a conviction based only on a marijuana transaction. See Orozco-Prada, 732 F.2d at 1083. Additionally, although we are unable to determine the exact procedural posture of Orozco-Prada, the cases which it cites and upon which it relies clearly involve review of appropriately preserved objections. See id. (citing United States v. Quicksey, 525 F.2d 337 (4th Cir. 1975) and Brown v. United States, 299 F.2d 438 (D.C. Cir. 1962).

[10]Certainly, there was no uncertainty in the mind of Bell's counsel at trial when he successfully argued the exclusion of evidence of marijuana purchases:

> It has nothing to do with this specific conspiracy. We're talking about a crack cocaine conspiracy here, and I think it would be absolutely prejudicial if we had any testimony about any kind of purchases of marijuana from my client. It has nothing to do with this particular case.

R. Vol. III at 136 (emphasis added). Later, at sentencing, counsel stated that Bell and his codefendants had been charged with, essentially "the same criminal

(continued...)

-17-

to drugs and cocaine, the evidence relating to Bell's distribution and conspiracy to distribute clearly involves cocaine base or crack. To the extent that the evidence indicated that Bell brought in cocaine powder along with cocaine base, the same undisputed evidence established that, when powder cocaine did come in, Bell or others "cooked" the powder into crack. See R. Vol. III at 78-79, 87.

Accordingly, we conclude that, in light of the overwhelming evidence of Bell's involvement in a conspiracy whose object was the distribution of crack cocaine and the district court's findings regarding the amount of crack cocaine attributable to him, Bell has failed to demonstrate any clear and obvious error which "seriously affect[ed] the fairness, integrity or public reputation of [his] judicial proceedings." Johnson, 117 S. Ct. at 1550 (internal quotations omitted). Therefore, as in Edwards, "we need not, and we do not, consider the merits of [Bell's] statutory and constitutional claims" which he raises for the first time on appeal. Edwards, 118 S. Ct. at 1478.

AFFIRMED..

---

[10](...continued)
conduct, which is distribution of crack cocaine." R. Vol. IV at 183.

-18-