**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 15, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff – Appellee,

v.

PEDRO JUAREZ,

    Defendant - Appellant.

No. 13-6235
(D.C. No. 5:12-CR-00297-R-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE,** Chief Judge, **TYMKOVICH** and **MORITZ,** Circuit Judges.
_____

Pedro Juarez appeals his convictions for one count of conspiracy to distribute methamphetamine and to possess methamphetamine with intent to distribute in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1); seven counts of use of a communication facility in furtherance of the conspiracy in violation of 21 U.S.C. § 843(b); and six counts of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Juarez contends the district court erred in admitting statements of his alleged co-conspirators absent independent evidence he conspired with them to distribute

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

methamphetamine. But we decline to address the admissibility of these statements because Juarez fails to specifically challenge any particular statement. Further, Juarez challenges the sufficiency of the evidence supporting all 14 of his convictions. Because we conclude sufficient evidence supports each of Juarez's convictions, we affirm.

## BACKGROUND

Over the course of law enforcement's year-long investigation into Iran Zamarripa, the regional supervisor of an international methamphetamine organization, Pedro Juarez purchased thousands of dollars' worth of methamphetamine from Zamarippa. According to Special Agent Casey Cox, Juarez regularly procured one-half ounce to two ounces of methamphetamine several times a week, often on credit. Both Cox and Zamarripa characterized Juarez's purchases as inconsistent with personal use. On one occasion, Juarez asked Zamarripa to cut him a deal on the price of two ounces of methamphetamine so Juarez could make extra profit when he resold it. And despite Juarez's modest wages—he made $15 per hour as a construction worker—Juarez managed to make timely payments for his purchases.

Based on this evidence, the jury convicted Juarez of one count of conspiracy to distribute methamphetamine and to possess methamphetamine with intent to distribute; seven counts of use of a communication facility; and six counts of possession of methamphetamine with intent to distribute. The district court sentenced Juarez to 144 months in prison, and Juarez appealed.

DISCUSSION

## I.     Juarez forfeited his hearsay argument.

Juarez first argues the district court erred in admitting the statements of his alleged co-conspirators absent independent evidence he conspired with them to distribute methamphetamine. Juarez characterizes these statements as hearsay.

Because Juarez fails to identify any specific co-conspirator statements on appeal, we decline to reach the issue. *See United States v. Thornburgh*, 645 F.3d 1197, 1210 (10th Cir. 2011) (refusing to address appellant's challenge to admission of co-conspirator statements because appellant neglected to identify any specific statements on appeal; failure to identify specific statements prevented court from determining whether statements were offered for truth of matters asserted); s*ee also United States v. Lewis*, 594 F.3d 1270, 1285 (10th Cir. 2010) (declining to examine each record page cited in appellant's brief to determine whether any co-conspirator statements contained therein were hearsay and, if so, whether their admission prejudiced appellant).

## II.     The government presented sufficient evidence to support Juarez's convictions.

Next, Juarez challenges the sufficiency of the evidence to sustain all 14 of his convictions. Because Juarez failed to renew his Rule 29 motion for judgment of acquittal after presenting evidence on his own behalf, we review for plain error. *See United States v. Rufai*, 732 F.3d 1175, 1189 (10th Cir. 2013) (discussing effect of failure to renew Rule 29 motion at close of evidence).

Absent sufficient evidence to support it, however, a conviction will almost always

satisfy all four plain-error requirements. Thus, reviewing for plain error in this context differs little from our de novo review of a properly preserved sufficiency claim. *See id.* (quoting *United States v. Duran*, 133 F.3d 1324, 1335 n.9 (10th Cir. 1998)) (concluding plain error review and review for sufficient evidence "'usually amount to largely the same exercise'"). Under our sufficiency-of-the-evidence test, we view the evidence in the light most favorable to the government and ask whether the evidence—and any reasonable inferences to be drawn from it—would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. *United States v. Green*, 435 F.3d 1265, 1272 (10th Cir. 2006).

    A.    *Possession of methamphetamine with intent to distribute*

Although Juarez concedes he repeatedly purchased and possessed methamphetamine, he challenges his six convictions for possession of methamphetamine with intent to distribute, contending the government failed to present sufficient evidence of his intent to distribute. According to Juarez, the evidence established only that he purchased methamphetamine for personal use.

But the government points to evidence that is more than sufficient to support Juarez's intent to distribute. For instance, Cox characterized the amount of methamphetamine Juarez purchased from Zamarripa—often on credit—as inconsistent with personal use, and Zamarripa testified it would have been impossible for Juarez to personally use all the methamphetamine he purchased. *See United States v. Small*, 423 F.3d 1164, 1184 (10th Cir. 2005) (explaining existence of fronting arrangement strongly suggests that individual who receives drugs on credit will redistribute them for profit);

4

*United States v. Pulido-Jacobo*, 377 F.3d 1124, 1131 (10th Cir. 2004) (stating jury may infer intent to distribute from possession of large quantities of drugs). Moreover, a reasonable jury could have inferred Juarez was reselling the methamphetamine because his $15-an-hour wages were insufficient to cover his frequent purchases, which sometimes exceeded $1,000. Finally, Zamarripa testified Juarez once haggled with him over the price of two ounces of methamphetamine because Juarez wanted to increase his profit from its imminent resale. We conclude this evidence, when viewed in the light most favorable to the government, was sufficient to allow a reasonable jury to convict Juarez of possessing methamphetamine with intent to distribute.

  *B.  Conspiracy to possess methamphetamine with intent to distribute*

  To convict Juarez of conspiracy, the government was required to prove he (1) agreed with at least one other person to violate the law; (2) knew of the conspiracy's objectives; and (3) knowingly and voluntarily involved himself in the conspiracy. Further, the government was required to demonstrate (4) interdependence between the co-conspirators. *See United States v. Foy*, 641 F.3d 455, 465 (10th Cir. 2011).

  We have long recognized "that proof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy." *United States v. Watson*, 594 F.2d 1330, 1337 (10th Cir. 1979); *see also United States v. Patterson*, 713 F.3d 1237, 1245-46 (10th Cir. 2013) (stating one who merely purchases drugs from member of conspiracy does not automatically become part of conspiracy). Citing this "buyer-seller rule," Juarez insists the government failed to present sufficient evidence to support his conspiracy conviction because it proved only that he purchased

methamphetamine from Zamarripa for personal use. *See United States v. Ivy*, 83 F.3d 1266, 1285-86 (10th Cir. 1996) (explaining purpose of buyer-seller rule is to "separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy").

But when viewed in the light most favorable to the government, the evidence we discussed above was sufficient to prove Juarez was more than a mere purchaser of methamphetamine. Given all the evidence indicating Juarez intended to redistribute the methamphetamine he purchased, the buyer-seller rule does not apply. *See United States v. Bell*, 154 F.3d 1205, 1208 (10th Cir. 1998) (finding evidence of fronting arrangement inconsistent with mere buyer-seller relationship); *United States v. Howard*, 966 F.2d 1362, 1364-65 (10th Cir. 1992) (reasoning disparity between defendant's limited financial resources and value of crack cocaine he possessed suggested defendant was not mere purchaser, but instead was involved in common plan with another to distribute crack cocaine).

Moreover, this evidence was sufficient to prove all four elements of the conspiracy charge. *See Small*, 423 F.3d at 1183, 1185 (noting multiple purchases for resale permit inference buyer was aware of and "shared common goals with" conspiracy, and reasoning fronting arrangement creates situation of mutual dependence because seller's ability to front drugs depends on receipt of money due); *United States v. Nichols*, 374 F.3d 959, 961, 969 (10th Cir. 2004), *cert. granted*, *judgment vacated*, 543 U.S. 1113, *opinion reinstated*, 410 F.3d 1186 (10th Cir. 2005) (hypothesizing that evidence of

6

fronting arrangement would have allowed reasonable jury to find existence of agreement to distribute between defendant and supplier); *United States v. Bell*, 154 F.3d 1205, 1208 (10th Cir. 1998) (stating jury may presume defendant who acts in furtherance of conspiracy's goal is knowing participant).

Because we conclude the government presented ample evidence establishing Juarez was not a mere purchaser of methamphetamine, but rather a knowing, voluntary, and integral part of a conspiracy to distribute that drug, we affirm his conspiracy conviction.

C. *Use of a communication facility to facilitate a drug felony*

Finally, Juarez challenges the sufficiency of the evidence supporting his seven convictions for use of a communication facility. But he does not dispute that he repeatedly ordered methamphetamine by phone. Rather, he premises his challenge solely on the alleged lack of evidence establishing his intent to distribute. Because we have already concluded the government presented sufficient evidence to allow a reasonable jury to conclude Juarez possessed methamphetamine with intent to distribute—and indeed conspired to do so—we likewise find the evidence sufficient to support his convictions for use of a communication facility to facilitate those crimes.

## CONCLUSION

Juarez's multiple sufficiency challenges all hinge on his assertion he purchased methamphetamine only for personal use. Viewing the evidence in the light most favorable to the government, a reasonable jury could conclude he purchased

7

methamphetamine intending to distribute it as part of a conspiracy. Because sufficient evidence supports Juarez's convictions, we affirm.

Entered for the Court

Nancy L. Moritz
Circuit Judge